[S. F. No. 10465. In Bank.—August 25, 1924.]

JANET SUNTER, Respondent, v. JOHN M. FRASER et al., Appellants.

[1] PUBLIC OFFICERS — BOND OF MUNICIPAL OFFICER — CITY ONLY AS OBLIGEE—RIGHT OF THIRD PARTY TO SUE ON BOND.—An individual aggrieved by an act or default of a municipal officer, in the absence of express statutory authority cannot sue upon his bond which runs solely to the benefit of the municipality.

[2] ID.—BONDS—RIGHT OF ACTION—PARTIES.—Under the common law an action upon a bond of a public official could be maintained only by the obligee named in the bond, and unless the right has been given to an individual by statute to maintain such an action in his own name, the right does not exist.

[3] ID.—SECTION 961, POLITICAL CODE—CONSTRUCTION OF.—Section 961 of the Political Code, authorizing any person injured or aggrieved by the wrongful act or default of an officer to bring suit on such officer's bond, is inapplicable to a bond given by a municipal officer and running solely to the municipality.

[4] MUNICIPAL CORPORATIONS — CHARTER OF CITY OF EUREKA — CONSTRUCTION OF.—By the amendment, adopted in 1917, to the freeholders' charter of the city of Eureka, which amendment provides that the city should "have the power to make and enforce any and all laws and regulations in respect to municipal affairs, sub-

---

1.  Right of individual to maintain action of bond of peace officer, note, 19 A. L. R. 73.  See, also, 22 R. C. L. 516.

ject only to the restrictions and limitations provided in this charter as the same now is or may be hereafter amended; . . . and no enumeration or specific statement herein of any particular powers shall be held to be exclusive or a limitation of the foregoing general grant of powers," the city brought itself within the condition of the amendments of 1914 to sections 6 and 8 of article XI of the constitution, and thereupon, according to the terms of those sections, its powers over municipal affairs became all-embracing, restricted and limited by the charter only, the result being that the city became independent of control by general laws upon municipal affairs.

(1) 28 **Cyc.**, p. 476.   (2) 29 **Cyc.**, p. 1464 (1926 Anno.).   (3) 28 **Cyc.**, p. 476.   (4) 28 **Cyc.**, p. 274.

APPEAL from a judgment of the Superior Court of Humboldt County.  Denver Sevier, Judge.  Reversed.

The facts are stated in the opinion of the court.

Pierce H. Ryan and A. G. Bradford for Appellants.

J. Logan Beamer and Henry L. Ford for Respondent.

WASTE, J.—This case was transferred to the supreme court after decision and judgment in the district court of appeal for the reason that the principal question involved is a new one in this state and it was thought well to give the opposing parties further opportunity to present their respective views.   After such presentation and examination of the matter, we are satisfied that the conclusion reached by the district court of appeal in and for the first appellate district, division two, on the first point presented by the appeal is correct, and conclusively settles all of the matters involved in the present litigation.   We therefore approve and adopt, as the opinion of this court, the following portion of the decision prepared by Mr. Justice Nourse:

"This is an appeal from a verdict in favor of the plaintiff and against the defendant Fraser, a police officer of the city of Eureka, and the defendants Hodges and McDonough as sureties upon his official bond.   The complaint was framed in three causes of action, alleging, respectively, that the defendant Fraser had breached the obligations of his official bond in that he had subjected the plaintiff to a

false arrest; that he had committed a physical assault upon her in making the arrest; and that he had falsely imprisoned her as a result of the arrest. The verdict of the jury upon which the judgment rests awarded the plaintiff $2,000 against the defendant Fraser and $1,000 against the defendants Hodges and McDonough. In each cause of action the complaint relies upon the alleged breach by the defendant Fraser of the conditions of his official bond, the allegations in each case being that he 'committed a breach of his said official bond as aforesaid in that by reason of the premises as aforesaid he did not faithfully perform his official duties.'

"The facts of the case are, generally, . . . that the defendant Fraser while acting in the course of his official duties attempted to restrain the plaintiff under the belief that she was insane or at least irrational at the time and that she immediately became either hysterical or 'fighting mad' as a result of which the two became engaged in a tussle. This became so violent on the plaintiff's part that the defendant Fraser was required to call a citizen to assist him in making the arrest. These two thereupon forcibly took the plaintiff to the city prison, where she was booked upon a charge of disturbing the peace and turned over to the police matron, who kept her in her own home for the remainder of the night. The plaintiff was released early on the following morning, and a few days later, upon a hearing before the police court, the charge of disturbing the peace laid against her was dismissed.

"On this appeal the appellants urge that inasmuch as the bond upon which the suit is based was given to the city of Eureka in accordance with the terms of the municipal charter, it does not inure to the benefit of an individual who has been offended by the acts of the police officer and that accordingly the respondent in this action could not maintain her suit upon this bond or against these sureties. The position of the appellants is that the city of Eureka having expressly provided in its charter the form of bond to be given by its public officials and having therein provided that the city of Eureka should be the obligee of said bonds, and there being no statutory authorization for someone other than the named obligee to sue for a breach of the bond, the common-law rule requiring the obligee to be the actual party plain-

tiff obtains. Respondent answers that the case is controlled by section 961 of the Political Code, which authorizes any person injured or aggrieved to bring suit on an official bond in his own name. In reply . . . appellants point out that section 961 is a part of article 9, which covers the subject of official bonds to be given by state, county and township officers only (*Rowe* v. *Rose*, 26 Cal. App. 744, 745 [148 Pac. 535]), and that all such bonds are required by section 958 to be made payable to the state of California 'with such conditions as required by this chapter.' In section 961 it is then provided that such a bond 'is in force and obligatory upon the principal and sureties therein *to and for the state of California, and to and for the use and benefit of all persons who may be injured or aggrieved by the wrongful act or default of such officer in his official capacity; and any person so injured or aggrieved may bring suit.*' (Italics ours.)

[1] "Conceding, as we must, that the subject of requiring bonds of municipal officers and employees is a municipal affair and that the provisions of the municipal charter relating to a municipal affair are controlling over the general state laws, the question arises whether, without express statutory authority, an individual aggrieved by an act or default of a municipal officer may sue upon his bond which runs solely to the benefit of the municipality. The question is a new one in this state and there is, therefore, no California authority to aid us in a solution of the question. [2] An examination of authorities from other jurisdictions satisfies us that the accepted rule is that under the common law an action upon a bond of a public official could be maintained only by the obligee named in the bond, and that, unless the right has been given to an individual by statute to maintain such an action in his own name, the right does not exist.

"The leading case upon this subject seems to be the *City of Eaton Rapids* v. *Stump*, 127 Mich. 1 [89 Am. St. Rep. 451, 86 N. W. 438], in which, in a case similar to the case at bar, the supreme court of Michigan say: 'The bond was not given for the protection of third parties, but for the protection of the city alone. . . . There is no statute in this state providing that such actions may be brought on such a bond, in the interest of or for the benefit of a third party,

for damages arising by the act or omission of such appointive officer. Our statutes do provide for actions on official bonds, but suits by third parties on bonds given by appointive municipal officers are not included, and without the aid of some statute no such suit can be maintained. . . . The bond in this case runs to *the city of Eaton Rapids, and not to the people.* The rule as stated by Murfee on Official Bonds is as follows: "The primary object of an official bond is, of course, to protect the interest of the beneficiary named in it,—the state, county, corporation, etc., as the case may be. By statute, however, it is usually provided that bonds given by officers of states and counties shall be available to protect the interests of private persons who may be aggrieved by the breach of such bonds. They cannot be used, however, for these purposes in cases unprovided for by such statutory enactment." ' (Italics ours.) To the same effect are *Carr* v. *Knoxville,* 144 Tenn. 483 [19 A. L. R. 69, 234 S. W. 328], *Alexander* v. *Ison,* 107 Ga. 745 [33 S. E. 657, *State* v. *Stout,* 26 Ind. App. 446 [59 N. E. 1091], *United States Fidelity & Guaranty Co.* v. *Jasper,* 56 Tex. Civ. 236 [120 S. W. 1145], *Cushing* v. *Lickert,* 79 Neb. 384 [112 N. W. 616], and *United States Fidelity & Guaranty Co.* v. *Crittenden,* 62 Tex. Civ. 283 [131 S. W. 232].

"In *Alexander* v. *Ison, supra,* the action was one to recover damages for false arrest and imprisonment. The defendants were the police officer and the sureties on his official bond, which ran to the city in accord with the municipal charter. The Georgia court held that the sureties were not liable to the plaintiff, saying: 'Being an entire stranger to the contract, it would require express legislative authority to give him a right of action thereon. Apparently, the bond taken in the present instance was solely for the protection and benefit of the city in its corporate capacity.' Section 12 of the Georgia Political Code contained the same provision for suits by individuals as is found in section 961 of our code, but the court, in the Alexander case, said that this applied only to the public officers who owed a duty to the state at large but not to a municipal officer who is required by special legislation to give such a bond as the mayor and council 'may deem necessary to the proper protection of the city itself.' "

The district court of appeal is correct in its conclusion that no express statutory authority can be found under which the plaintiff may maintain this present action. **[3]** The charter of the city of Eureka is silent on the subject, and section 961 of the Political Code does not apply. Whatever may have been the situation prior to the adoption of certain amendments to the state constitution and to the charter of the city, plaintiff's right of action here sought to be maintained is now foreclosed. Cases cited and relied on by the respondent, but which were decided prior to these amendments to the constitution, no longer have any controlling application. The charter of the city of Eureka was adopted in 1895. In 1896, section 6 of article XI of the state constitution was amended to provide, in respect to cities operating under freeholders' charters, that "all charters thereof framed or adopted by authority of this constitution, except in municipal affairs, shall be subject to and controlled by general laws." It was thereafter held by this court that, with respect to matters not municipal, or municipal affairs upon which the charter was silent, the provisions of any general law pertaining thereto would control the subject. (*Fragley* v. *Phelan,* 126 Cal. 383, 395 [58 Pac. 923] ; *Clouse* v. *City of San Diego,* 159 Cal. 434, 437 [114 Pac. 573].) It was also held that when a charter which was previously silent was amended so as to make a provision upon such municipal affair, that provision would immediately suspend the general law so far as the two were in conflict. (*Byrne* v. *Drain,* 127 Cal. 663, 667 [60 Pac. 433].)

In 1914, however, sections 6 and 8 of article XI of the constitution were amended by making important changes in the provisions thereof relating to the adoption of freeholders' charters and the effect thereof. In section 6, the provision relating to municipal affairs was changed to read as follows: "Cities and towns hereafter organized under charters framed and adopted by authority of this constitution are hereby empowered, and cities and towns heretofore organized by authority of this constitution may amend their charters in the manner authorized by this constitution so as to become likewise empowered hereunder, to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other

matters they shall be subject to and controlled by general laws." In section 8 this clause was inserted: "It shall be competent in any charter framed under the authority of this section to provide that the municipality governed thereunder may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws."

[4] In 1917, the city of Eureka availed itself of the privilege given to it by the amendments of sections 6 and 8 of the constitution, *supra,* and amended section 22 of article III of its freeholders' charter to provide that thereafter the city should "have the power to make and enforce any and all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this charter as the same now is or may be hereafter amended; . . . and no enumeration or specific statement herein of any particular powers shall be held to be exclusive or a limitation of the foregoing general grant of powers." (Stats. 1917, p. 1743.) By this amendment to its charter the city brought itself within the conditions of the amendments of 1914 to sections 6 and 8 of article XI of the constitution. Thereupon, according to the terms of those sections, its powers over municipal affairs became all-embracing, restricted and limited by the charter only. The result is that the city has become independent of control by general laws upon municipal affairs. (*Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441, 448 [166 Pac. 351].)

This conclusion renders it unnecessary to consider the additional grounds urged by the appellants for a reversal.

The judgment is reversed.

Richards, J., Lennon, J., Lawlor, J., Seawell, J., Shenk, J., and Myers, C. J., concurred.