[Civ. No. 11661.   Second Appellate District, Division One.—December 30, 1938.]

ERNEST E. WOOD, Respondent, v. HELEN LEHNE et al., Appellants.

Guy Lewis, Hugh B. Rotchford and Everett H. Smith for Appellants.

Roland G. Swaffield and T. H. Sword for Respondent.

DORAN, J.—This is an appeal by defendants from the judgment in an action for false arrest and malicious prosecution. An appeal is also taken from the order denying defendants' motion for a new trial.

The facts as revealed by the record are in substance as follows: Some time prior to August 19, 1935, there were filed in the office of defendant Helen M. Lehne, as city clerk of the city of Hawthorne, certain petitions demanding the recall of the individual members of the City Council of Hawthorne. On that day one John R. Morris (by occupation a general contractor) who was connected with the recall movement appeared at the office of said defendant Lehne and made inquiry as to whether the petitions had been checked. Upon learning that this had not been done because an opinion of the city attorney had expressed the belief that said petitions were illegal, Morris asked to see the opinion, and, after reading the same, he left the office. At about 4 o'clock that afternoon Morris returned to the office and requested permission to see the recall petitions and particularly the certificates thereon. Miss Lehne, after producing the petitions, said: "There isn't any certificate on them; that is what is wrong with them." Morris then took the petitions and walked out of the office. Defendant Lehne immediately telephoned the police department of Hawthorne and reported the occurrence. The desk sergeant, defendant E. J. Parker, ordered a motorcycle officer, defendant Floyd E. Winchell, to overtake Morris and recover the petitions. Winchell pursued

Morris and was a matter of a few steps behind the latter as Morris entered a real estate office located on the ground floor of a building a block away from the city clerk's office. Plaintiff and respondent herein, Ernest E. Wood, an attorney at law, occupied an office in the rear of the real estate office.

As to what occurred thereafter, defendant Winchell testified upon direct examination in substance as follows: That as he went in the door pursuing Mr. Morris he observed Morris hand the recall petitions to Mr. Wood; that he immediately placed Mr. Morris under arrest; that he asked Mr. Wood to give him the petitions and that Mr. Wood said, "Wait a minute, wait a minute," whereupon Winchell took the petitions away from Wood, who was then taken by the arm and informed that he was under arrest.

Mr. Wood was forthwith taken to the city jail of Hawthorne, where, upon his arrival, he explained to the desk sergeant Parker and to the chief of police, Vernon P. Craig, both of whom were acquainted with him, that he knew nothing about the matter and that they were making a mistake. Despite his explanations, and over his insistent protests, plaintiff was booked and searched, his personal belongings were removed, and he was placed in a cell where he was confined for a period of six hours.

A preliminary examination of Mr. Wood upon the charge of violating section 114 of the Penal Code, i. e., theft of public records, was held on August 21, 1935, before the city judge of Hawthorne; at the conclusion of the prosecution's evidence the charge against Wood was dismissed and his bail was exonerated.

The action for false arrest and malicious prosecution followed, and upon trial thereof judgment was obtained against the defendants on both causes of action, with the exception that defendant Helen M. Lehne was not held liable for the false arrest. Defendant Maryland Casualty Company was the surety on the official bonds of the defendants.

■ Appellants contend, in substance, that the evidence is insufficient to sustain the judgment for false arrest or imprisonment; that there is no evidence of any malice on the part of the defendants; and that as to the liability of the surety company, in each of the several bonds sued upon the city of Hawthorne is named as the obligee, and that therefore section 961 of the Political Code does not inure to the

benefit of a third person such as respondent. The judgment is not attacked as excessive.

Section 961 of the Political Code reads as follows:

*"Persons who may sue on bond.* Every official bond, given pursuant to law, executed by any officer of the state, or of any county or any subdivision thereof, or of any town or city organized under the provisions of this code, or by any officer of a city or county governed by a freeholders' charter, is in force and obligatory upon the principal and sureties therein to and for the state of California, or such municipal corporation, and to and for the use and benefit of all persons who may be injured or aggrieved by the wrongful act or default of such officer in his official capacity; and any person so injured or aggrieved may bring suit on such bond, in his own name, without an assignment thereof.''

In connection with appellants' contention last above mentioned, it is argued that said section 961 applies only to towns or cities organized under the provisions of the Political Code. *City of Los Angeles* v. *Teed,* 112 Cal. 319, 326 [44 Pac. 580], by analogy, appears definitely to hold to the contrary. Appellant surety company relied upon *Sunter* v. *Fraser,* 194 Cal. 337 [228 Pac. 660], and *Municipal Bond Co.* v. *Riverside,* 138 Cal. App. 267 [32 Pac. (2d) 661], in support of the claim that section 961 "does not inure to the benefit of a third person such as respondent". The decisions are not in point; both refer to cities operating under a freeholders' charter, which cities are expressly exempted from the operation of general laws under such circumstances.

The Municipal Corporation Act (Deering's Gen. Laws, Act 5233, sec. 853), provides that "All the provisions of any law of this State relating to the official bonds of officers shall apply to any bonds herein required or authorized, except as herein otherwise provided." Section 961 clearly is a "law of this state relating to the official bonds of officers" within the meaning of the Municipal Corporation Act, and hence is available to respondent.

It is also contended by appellant surety company that respondent's right to sue said surety company would, in effect, add a third party to the bond, which was a contract between the city of Hawthorne and the surety company. This, it is argued, enlarges the scope of the bond and thereby "holds" the surety beyond the express terms of the contract. The argument is untenable, for inasmuch as both the munici-

pality and the surety company were subject to the general laws with regard thereto, the failure of the insurance contract to include any reference to said third party in the policy did not operate to defeat the effect of such code provisions. There can be no question as to the surety company's liability, nor can there be any question as to respondent's right to include the surety company as a party defendant under the circumstances. "The law providing the remedy for the enforcement of a contract is as much a part of the contract as any other legal requirement affecting the contract. . . . It is settled that all the laws of a state existing at the time a contract is made which affect the rights of the parties to the contract enter into and become a part of it, and are as obligatory upon all courts which assume to give a remedy on such contracts as if they were referred to or incorporated in the terms of the contract." (*Meriwether Invest. Co., Ltd.*, v. *Lampton*, 4 Cal. (2d) 697, 702 [53 Pac. (2d) 147].)

█ Referring now to appellants' contention that there is a lack of evidence of malice, it is argued that officer Winchell "was entirely within his legal right, and acting merely in the performance of his duty, in arresting the plaintiff"; that the arrest was complete when officer "Winchell stated to plaintiff that he, the plaintiff, was under arrest"; and that therefore, "Since neither defendants Parker nor Craig were present, nor had any part in the arrest of plaintiff, it is difficult to conceive any theory upon which they might be held liable therefor." The last-mentioned argument, especially as to Craig, misconceives the basis of the cause of action. It is not predicated upon the announcement by officer Winchell to plaintiff that plaintiff was under arrest, but is based on the series of events above related, which commenced with the first act of officer Winchell with relation thereto and ended with plaintiff's release from custody. The imprisonment alleged to be false continued until plaintiff's release. False imprisonment is defined to be " . . . the unlawful violation of the personal liberty of another". (Sec. 236, Pen. Code.) The violation of plaintiff's personal liberty continued during his incarceration. As to who participated therein, and to what extent, as well as to the causes thereof and the reasons therefor, were questions addressed to the judgment of the trial court. Hence, whether officer Winchell's act in making the arrest was in the faithful perform-

ance of official duty and therefore legal, was necessarily presented for determination. And the same may be said with regard to the other defendants whose acts, after plaintiff was brought before them, were but additional steps in the process which continued and completed the alleged false imprisonment. On these questions the trial court found against appellants and it is elementary that when there is evidence in the record that reasonably supports such findings, the judgment cannot be disturbed on appeal.

■ Whether the element of malice entered into the commission of such acts was likewise for the trial court's determination as a matter of fact. In that connection, a reading of the evidence at once suggests that the trial judge might have concluded that the arrest, followed by incarceration, had its source in local political factionalism and, thus inspired, was resorted to as a means of discouraging opposition in a political controversy. If this were true, such imprisonment was not only malicious but vicious.

■ In the light of the record, and with regard to all of the defendant officials, with the exception of the defendant Parker, it cannot be said that the evidence is insufficient to support the implied finding that malice was the underlying cause of the arrest and imprisonment. This being true, the judgment as to the defendant officials, except defendant Parker, is sustained by the evidence. As to Parker, the evidence shows him to have been the desk sergeant who booked the plaintiff at the direction of Craig and Winchell. Unlike Craig, the chief of police, there is no evidence that Parker was vested with or exercised any discretion in connection with plaintiff's incarceration, nor can it be reasonably inferred from the evidence that Parker entertained any malice; therefore, as to defendant Parker the evidence fails to support the judgment.

In connection with defendant Craig, the chief of police of the city of Hawthorne, it is contended that there is no evidence to show that the defendant Craig took any part in the prosecution of plaintiff. Official acts cannot always be successfully defended by declaring them to be in the performance of an official duty, as argued by appellant. Obviously, the trial court regarded such argument as a mere disguise and rejected the defense. The evidence supports the evident conclusion of the trial judge that the defendant Craig cooperated in the commission of an unlawful arrest.

The judgment appealed from is affirmed as to each of the defendants except the defendant Parker; as to defendant Parker the judgment is reversed. The appeal from the order denying a new trial is dismissed.

York, P. J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 24, 1939.