[Civ. No. 6401. Fourth Dist. Sept. 19, 1960.]

TRUDY M. GORLACK, Appellant, v. JOHN FERRARI et al., Respondents.

Thomas Whelan for Appellant.

Frank C. Owen, J. F. DuPaul, City Attorney (San Diego), and Raymond F. Moats, Jr., Deputy City Attorney, for Respondents.

GRIFFIN, P. J.—Appellant instituted this action against defendants John Ferrari and Irma Ferrari, his wife, and three San Diego city policemen for false arrest and false imprisonment. After a trial before the court sitting without a jury, judgment was rendered in favor of the defendants and appellant appeals therefrom.

On January 14, 1957, appellant was a housewife residing in the Pacific Beach area of San Diego near the home of the Ferraris, with whom she was socially acquainted. On that evening, both Mr. Gorlack, appellant's husband, and Mr. Ferrari were at work, and appellant visited with Mrs. Ferrari in the latter's home. Mrs. Ferrari owned a diamond ring of an unusual design, valued at about a thousand dollars, which she customarily deposited on a bedroom dresser when she was not wearing it. Between 8 and 9 o'clock p. m. on the evening in question, appellant was in the bedroom where the ring was located while Mrs. Ferrari was there attending her child. At this time the telephone rang and appellant remained in the

bedroom while Mrs. Ferrari answered the call in another room. After a five-minute absence, Mrs. Ferrari returned to the bedroom where she soon noticed that her ring was missing from the dresser. Almost immediately Mrs. Ferrari observed that the appellant was holding a key case tightly in her hands, and, one end of the case being open, Mrs. Ferrari saw the ring inside the key case. Mrs. Ferrari became upset and asked appellant's permission to examine her key case. Appellant replied that she was superstitious about anyone touching her key case with the keys in it and asked Mrs. Ferrari to turn her back while the appellant removed the keys. Mrs. Ferrari turned and went into the kitchen, looking back as she did so, and observed appellant remove the ring from the key case and drop the ring inside the top of her blouse. Appellant then permitted Mrs. Ferrari to examine the key case. Mrs. Ferrari was unable to face up to the situation and demand the return of her ring but attempted to persuade appellant to remain until Mr. Ferrari arrived home. Appellant insisted upon leaving and almost immediately thereafter departed from the Ferrari home.

Mrs. Ferrari then reported the theft to the police and called her husband who returned home a few minutes later, about 9 p. m. At about 9:30 p. m., Sergeant Frank Peters of the San Diego Police Department, who was not made a defendant in this action, and Officers Bristol and Duncan, who are named as defendants herein, arrived at the Ferrari home to take a grand theft report. Mrs. Ferrari related to them the events described above that had just transpired concerning the theft of the ring. The three officers then went to the appellant's home, accompanied by Mr. Ferrari, who went along to identify the ring and to identify the appellant who was the suspected thief. They arrived at appellant's home about 10:15 p. m. and one of the officers knocked on the door. The appellant opened the door and granted the officers permission to enter her apartment. Immediately they noticed that she and her small son were fully dressed and that each of them was either wearing a coat or had a coat at hand.

Mr. Ferrari immediately demanded that appellant return the ring which she had taken, but appellant denied having the ring. Sergeant Peters then placed appellant under arrest and a search of the apartment was conducted. The search revealed that all the personal effects in the apartment were packed in boxes or suitcases. Appellant explained this, saying that she and her husband and son were planning to take an

extended automobile trip as soon as he could obtain leave from his job. While the search was conducted, the officers asked respondent John Ferrari to draw a picture of the ring. Appellant bent over Ferrari while he was doing this and corrected several mistakes he had made while drawing the diagram of the ring. Previously appellant had denied ever having seen the ring or having heard of it. The appellant's leather key case was examined and found to contain a circular impression as if someone had placed a round object within the case and pressed down upon it. After the officers completed their search without discovering the ring, Sergeant Peters instructed Officers Duncan and Bristol to transport appellant to the city police station where the city jail is also located. This was done and the appellant was booked and admitted to jail in accordance with departmental regulations. Officer Bristol testified that the San Diego Police Department's procedure with regard to admitting arrested prisoners to jail was as follows:

"Q. What is standard police procedure with regard to bringing in an arrested prisoner? A. Department policy has it that on any arrest, with the exception of a common, ordinary drunk, the booking slip, as I explained yesterday, has the charge, the arresting officer's location, the division that is making the arrest, the statement of the Patrol Captain or Lieutenant whichever it may be at the time. The circumstances relating to the case and the arrest are related to the (Patrol Captain) and he then either signs the slip or makes some disposition of it, as to the calling in the defendant or signing the slip right there or releasing the prisoner, whatever the situation may be. After the slip is signed, if it is signed, the person is deposited in the jail by the arresting officer."

Section 4, part 2 of the San Diego Police Manual, prescribes the duties of the patrol captain, in subsections (a) and (e), as follows:

"(a) He shall have the general administrative duties provided in this manual for commanding officers and, in addition, have the specific duties provided herein.

"(e) He shall be responsible for the proper disposition of all prisoners and shall have the authority to release prisoners or change the charge under which they are held when he has sufficient facts or evidence to warrant such action. He shall also review their booking and shall determine that the proper charge is placed against them or if the facts do not

warrant an arrest being made, that the person is released from custody.''

Officer Bristol testified that as soon as appellant arrived at the city police station he took a booking slip to the patrol captain and related the circumstances out of which appellant's arrest arose. After the patrol captain signed the slip and approved appellant's booking on a felony grand theft charge, appellant was turned over to the officers in charge of the jail and confined therein. Officer Van Cleave, a defendant herein, was a sergeant in charge of the booking detail at the time appellant was admitted to jail. He testified that he was jail sergeant on the night that appellant was booked, and that, although he did not remember the appellant specifically, a person was booked for grand theft on that night. He also testified that the procedure at the San Diego jail was that no person charged with a felony could be accepted by the jail crew except by having a signed booking slip presented and that no jailer could release any prisoner except on competent authority either by court order or by release from the commanding officer in charge of the division involved. Van Cleave also testified that he went off duty the morning following appellant's incarceration and that the following two days were his days off and that he did not see appellant again until the time of trial, nor did he have anything to do with the investigation or handling of appellant's case after her booking.

On the morning following appellant's arrest, her case was turned over for investigation to Officer Woods who was with the detective bureau in the burglary division investigating thefts. He began investigating the case at 8 a. m. on the day following appellant's arrest and continued his investigation until appellant's release from confinement. Officer Woods testified that during his initial interview of appellant on the morning following her arrest, she expressed a desire to get an attorney and obtain her release on bail. After some conversation, Officer Woods inferred that appellant did not have a great deal of money and he suggested that he would speed up the investigation as much as possible in an attempt to determine whether there was sufficient evidence to warrant filing a complaint or whether she should be released from custody without a complaint being filed. Officer Woods informed appellant that she could call an attorney and be released from jail on bail, but that he would soon know whether a charge would be filed, and, by waiting, she might save the cost of the bail bond and attorney's fee. Appellant agreed with the

officer that it would be more advisable to defer obtaining an attorney and release on bail until the completion of the police investigation. Officer Woods testified that at the initial interview he had tentatively formed the opinion that appellant was innocent of the charge, but after completing his investigation his opinion was changed and he believed appellant to be guilty of the offense. Nevertheless, he apparently concluded that there was insufficient evidence to sustain a prosecution. Appellant was released from custody on January 16 at about 2 p. m., without having been charged. There was testimony that after a felony case was turned over to the detective bureau for investigation, neither the arresting officers nor the officers in charge of the jail had authority to release the prisoner from custody. In such cases, where no complaint was filed, the chief of detectives had authority to release the prisoner by signing a release order which was then given to the jail crew who effectuated the release.

There was conflict in the evidence as to the date upon which appellant was released from jail. The release order under which the release was made contained a notation indicating that she was released on January 16. A report prepared by Detective Woods about three weeks after appellant's arrest indicated that she was released on January 17, but he testified that he believed she was actually released on January 16. Appellant testified that according to her recollection she thought she was released on Thursday, January 17.

The trial court found that defendants Bristol and Duncan arrested appellant without a warrant upon the Ferraris' complaint that appellant had committed felony, that there was sufficient probable cause to believe that appellant had committed a felony to justify her arrest without a warrant, and that appellant had not been damaged because of any false arrest occasioned by any of the defendants. The court further found that defendants did not cause appellant to be falsely imprisoned in jail in the city of San Diego at the time alleged and that the appellant had not suffered any damage by reason of any false imprisonment occasioned by any of the defendants. Upon these findings, judgment was entered for the defendants.

Appellant's principal contention is that the court's finding that her arrest without a warrant was lawful because the arresting officers had reasonable or probable cause to believe that she had committed a felony is not supported by the evidence.

Grand theft is a felony in California and is committed when the money, labor or real or personal property taken is of a value exceeding $200. (Pen. Code, § 487.) ▮ It is well settled that in determining whether or not a police officer making an arrest without a warrant had reasonable cause to believe the person arrested had committed a felony, the courts will look to the facts and circumstances known to the officer when the arrest was made. (*Michel* v. *Smith,* 188 Cal. 199 [205.P. 113].) ▮ There is no exact formula for determining the reasonableness of an arrest and each case must be decided on its own facts and circumstances. (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577], and cases there cited.) ▮ Where the victim of a felony relates the circumstances of the offense and identifies the perpetrator, his arrest by officers acting upon this information is lawful. (*People* v. *Brite,* 9 Cal.2d 666, 686 [72 P.2d 122] ; *People* v. *Spellings,* 141 Cal.App.2d 457 [296 P.2d 889] ; *People* v. *Paul,* 147 Cal.App.2d 609 [305 P.2d 996] ; *People* v. *Romero,* 156 Cal.App.2d 48 [318 P.2d 835] ; *People* v. *Daily,* 157 Cal.App. 2d 649 [321 P.2d 469].) ▮ The evidence discloses that Mrs. Ferrari informed the officers that her ring, valued at $1,000, was stolen by the appellant, and, acting upon this information and circumstances found by them at appellant's home, the officers arrested appellant. The court's finding that appellant's arrest by the officers was based upon reasonable or probable cause is supported by substantial evidence and must be sustained.

Appellant next contends that even assuming that the officers were justified in making the arrest, the Ferraris are nevertheless liable therefor because they supplied the information upon which the officers acted. ▮▮ It is the settled rule that "A private person does not become liable for false imprisonment when in good faith he gives information—even mistaken information—to the proper authorities though such information may be the principal cause of plaintiff's imprisonment." (*Peterson* v. *Robison,* 43 Cal.2d 690, 695 [277 P.2d 19] ; *cf.* *Turner* v. *Mellon,* 41 Cal.2d 45, 48 [257 P.2d 15] ; *Hughes* v. *Oreb,* 36 Cal.2d 854, 859 [228 P.2d 550].) ▮ Appellant seeks to avoid the application of this rule by contending that Mrs. Ferrari supplied inaccurate information to the officers. In support of this argument, appellant points to several minor conflicts between the officers' testimony concerning Mrs. Ferrari's report to them and Mrs. Ferrari's testimony about the events that transpired at the time the ring was taken.

These asserted inconsistencies relate to the description of the missing ring and the time when Mrs. Ferrari had last seen it on her bedroom dresser. Trivial conflicts in the evidence are common to almost every case on appeal. (*People* v. *Carr,* 170 Cal.App.2d 181, 188 [338 P.2d 479].) The asserted conflicts in the testimony are minor in nature and do not relate to the essential factual issues of the case. Both on direct and cross-examination, Mrs. Ferrari was clear and positive in her testimony that she had observed the defendant conceal the ring upon her person and that this information had been given to the officers. ▉ On appeal evidence must be viewed in the light most favorable to the respondent and the function of the appellate court respecting the sufficiency of the evidence begins and ends with the determination whether there is substantial evidence to sustain the judgment, contradicted or not. (*Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557]; *Grainger* v. *Antoyan,* 48 Cal.2d 805 [313 P.2d 848].) ▉ The trial court's finding that the appellant had not been damaged by reason of any false arrest occasioned by any of the defendants necessarily included a finding that Mrs. Ferrari was acting in good faith in giving the information to the officers and that she was not liable for any false arrest of appellant.

▉ Appellant next urges that even if the original arrest was lawful, she was detained in jail an unreasonable length of time and therefore the defendants are liable for false imprisonment. Penal Code, section 849, provides:

"When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, must, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person, must be laid before such magistrate."

▉ The law is now settled that where the arrest is lawful, a subsequent unreasonable delay in taking the prisoner before a magistrate does not affect the legality of the arrest but it will subject the offending person to liability for so much of the imprisonment as occurs after the period of necessary or reasonable delay. (*Dragna* v. *White,* 45 Cal.2d 469, 473 [289 P.2d 428].) ▉ Here, the evidence discloses that appellant was imprisoned more than 36 hours without being taken before a magistrate. In explanation of the delay in taking appellant before a magistrate after her detention, Officer

Woods testified that in his initial interview with appellant he informed her that she could call an attorney and be released on bail, but that after some discussion he offered to complete the investigation of her case as speedily as possible and effect her release without filing a formal charge if he then determined that a charge should not be filed. He pointed out to her that by permitting him to follow this course of action, instead of obtaining her release on bail, she might save the cost of a bail bond and an attorney's fee. Appellant assented to this procedure and Officer Woods therefore deferred taking appellant before a magistrate. Upon the completion of his investigation, he decided that it would not be practicable to file a charge and recommended that appellant be released and this was done.

 False imprisonment consists in the unlawful detention of a person against his will. From the evidence, the trial court could well have concluded that the appellant assented to the procedure followed and that she was not taken before a magistrate only because she had expressed the desire not to so appear and obtain her release on bail. Appellant cannot take advantage of a delay in which she acquiesced and which was due to her own conduct. (*Kirk* v. *Garrett*, 84 Md. 383 [35 A. 1089]; *Brown* v. *Meier & Frank Co.*, 160 Ore. 608 [86 P.2d 79]; *Gisske* v. *Sanders*, 9 Cal.App. 13 [98 P. 43].) Whether the appellant was incarcerated for an unreasonable length of time without being taken before a magistrate was a question of fact for the trial court and the finding that the appellant had not been damaged because of any false imprisonment occasioned by any of the defendants necessarily includes a finding that appellant was not detained in jail an unreasonable length of time without being taken before a magistrate or that she was not damaged by reason of any unreasonable delay. The issue as to whether an unreasonable period of time had elapsed after the arrest of the appellant, without her being taken before a magistrate, or whether she was damaged by an unreasonable delay in being taken before a magistrate was a question to be determined by the trier of fact. We cannot say, as a matter of law, upon the record here, that this finding of the trial court is unsupported by the evidence. (*Kaufman* v. *Brown*, 93 Cal.App.2d 508, 514 [209 P.2d 156]; *Roynon* v. *Battin*, 55 Cal.App.2d 861, 867 [132 P.2d 266]; *Peckham* v. *Warner Bros. Pictures, Inc.*, 36 Cal. App.2d 214, 220 [97 P.2d 472]; *Ogulin* v. *Jeffries*, 121 Cal. App.2d 211, 217 [263 P.2d 75].)

Appellant does not contend that the judgment for defendant Van Cleave was erroneous. Van Cleave was the sergeant in charge of the booking of appellant from the time she was placed in the city jail and the evidence shows that appellant was booked at the direction of the patrol captain. There was no evidence that Van Cleave possessed or exercised any discretion in connection with appellant's incarceration and it cannot be inferred that he was actuated by any malice towards appellant. Therefore the judgment in favor of Van Cleave must be sustained. (*Wood* v. *Lehne,* 30 Cal.App.2d 222, 227 [85 P.2d 910].) No other points are presented for our consideration.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.