[Crim. No. 10045.   Second Dist., Div. Three.   Mar. 30, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. SIMON CARL DANIELSON, Defendant and Appellant.

Affirmed.

F. Walter French, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, J.—Appellant was found guilty of a violation of Penal Code, section 647a, subdivision 1. Appellant admitted a prior conviction of violating Penal Code, section 288, alleged in the information. The court granted probation for a period of three years on condition that the first eight months be served in the county jail. Appellant filed his notice of appeal in propria persona, and while he does not state from what he appeals, we treat this as an appeal from the order granting probation.

While walking to a friend's house at 6:30 p. m. on a Saturday in November 1963, a 7-year-old boy was accosted by a man whom he did not know, but later identified as appellant. While walking approximately 10 feet in back of the boy, appellant said, "I'll give you five pennies if you will let me see your pee-wee." The boy stopped, turned around and said, "No." Appellant then said, "Ten cents." Appellant kept on talking, and the boy started to walk away. Appellant said, "Wait a minute, ten cents." The boy ran away and went home where he told his sister and then his father what had happened. The boy and his father went looking for the man, and upon reaching an intersection they saw appellant. The boy identified appellant as the man who had accosted him. After being informed of what had happened the police interrogated appellant. They took the boy to the appellant's trailer where he again identified appellant as the man who had spoken to him. Appellant's voice sounded like the voice he had heard earlier in the evening, and appellant's clothes were similar to those worn by the man who had accosted him.

Officer Joseph testified to two conversations that he had with appellant. The first conversation took place at appellant's trailer on the evening of the incident. Appellant denied that he had been out of the trailer all day. Officer Joseph informed the appellant that he was being charged with an offense and asked him to go to the police station for further conversation and for a lineup. Appellant refused to go. Some three days later, about a day or a day and a half after appellant was arrested, Officer Joseph had another conversation with him. At that time appellant said that he could not recall whether he had offered the boy any money or anything; that he may have said "Hello" to the boy, but that would be all.

Officer Belser testified to a conversation on the night of the alleged offense at the trailer at which only Officer Belser and appellant were present. During the course of the con-

versation appellant admitted that he offered the boy five pennies to ''see his wee-wee.'' He admitted that he may have offered him a dime too, but did not remember.

The only question presented to us is whether the introduction into evidence of the conversations with the two police officers violated the rule laid down in *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. It will be recalled that the first statement—to Officer Joseph—on the night of the alleged offense, consisted of a complete denial of everything, appellant even contending that he had never left his trailer all day. The second statement, given apparently a very short time later to Officer Belser, amounted to a confession. The third statement, made a day or a day and a half after appellant had been arrested logically falls into two parts: First there is the inconsistency between it and the original statement given to Officer Joseph to the effect that he had never left his trailer all day; second, the failure to remember whether or not he offered the boy any money, which could be construed as an implied admission that he did.

In our view the first two statements do not come within the *Dorado* rule. At the time they were elicited all that the officers had was the story of the child and his identification. Considering the fertile imagination of children and the comparative unreliability of their recollection, it would be straining the situation to say that the investigatory stage had ceased and the process had become accusatory. Regardless of whether or not the officers would have had probable cause to arrest on the identification of the victim (see *Gorlack* v. *Ferrari*, 184 Cal.App.2d 707, 709 [7 Cal.Rptr. 699]) the plain fact is that appellant was not arrested for a day and a half after the first two conversations. We do not mean to suggest that the consequences of *Dorado* can be avoided by intentionally delaying the arrest until after incriminating statements have been obtained, but here it appears to us that the officers, in all good faith, were attempting to ascertain whether a crime had been committed in the first place. True, if a crime had been committed, there was at the time no suspect but appellant, but this does not mean that the officers were accusing him.

Undoubtedly the third statement comes within the *Dorado* rule, but we fail to see how appellant was in any way prejudiced. The inconsistency between the admission that he might have ''said hello'' to the boy and his first statement simply implies a consciousness of guilt when, at the

time of his first statement to Officer Joseph, he denied ever having left his trailer at all. The more damaging evidence was the first statement and not the third. The latter was entirely consistent with the testimony of appellant's mother, to the effect that he had gone out, and also with appellant's own version at the trial.

It may of course be that, had the second statement given to Officer Belser not been admitted, appellant might have chosen not to call his mother as a witness, nor to testify in his own behalf, because in that case the prosecution evidence would have rested entirely on the testimony of the boy, but in view of the introduction of the confession he had no choice, as a practical matter, even though he thereby laid himself open to impeachment with a prior conviction of violating Penal Code, section 288 some 16 years earlier. As the matter stood, he had no reasonable alternative. Furthermore, whatever damage the admission that he had left his trailer did to appellant's case—even without the full confession in the second statement—appears inconsequential beside the testimony of the boy's father, who by profession was the Protestant chaplain at the Veteran's Administration Center and who testified that after the boy came home and complained of the incident, he left their home with the boy and that they saw appellant across the street.

In conclusion, may we state that this court is not unaware of the rule enunciated by the Supreme Court that defense strategy which is induced by erroneous admission of evidence improper under constitutional standards will not validate the result under a rule of ''harmless error'' because the evidence adduced by the defense corroborates the incriminating nature of the improper evidence. In *Fahy* v. *Connecticut,* 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171], the Supreme Court held that where nonjudicial and judicial confessions were made with knowledge of the prosecution's possession of illegally obtained evidence and its admission into evidence, respectively, the resulting conviction was necessarily reversible. The distinction between *Fahy* and the present case is clear: What induced appellant to put on a defense was not the improperly admitted third statement of Officer Joseph, but the perfectly legitimate confession to Officer Belser.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.