[Crim. No. 7409.   Second Dist., Div. Two.   Mar. 21, 1961.]

## THE PEOPLE, Respondent, v. RICHARD ACOSTA ALMAREZ, Appellant.

Bradford A. Arthur for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Matthew M. Kearney, Deputy Attorney General, for Respondent.

McMURRAY, J. pro tem.*—This is an appeal from a judgment of conviction for violation of section 11500 of the Health and Safety Code. The appellant was convicted, after waiving jury trial and submitting the matter on the transcript of the preliminary hearing, with each side reserving the right to offer additional evidence.

After the court had read the transcript of the preliminary hearing, the People rested and appellant testified on his own behalf. The appellant was then found guilty as charged. The appeal here pretends to be from the judgment of conviction and from the order denying a motion for a new trial, but since no such motion appears to have been made, there can be no appeal based upon its denial.

Appellant, on February 11, 1960, was accosted by Sergeants Natividad and Sana of the Los Angeles Sheriff's Office, at which time Sergeant Natividad, when about three or four feet from the appellant and two other men, one of whom was sitting in the driver's seat of a parked car, showed his sheriff's badge and identified himself by rank and name as being of the sheriff's department.

Appellant immediately placed a piece of paper in his mouth, lowered his head, turned his back toward Sergeant Natividad and took three or four very fast steps away from him. The sergeant grabbed appellant by the shoulder and turned him around, whereupon appellant struck the sergeant twice, the blows landing on his neck and chest.

Sergeant Sana joined the fray; the struggle ensued. All three men fell to the ground. The piece of paper fell out of appellant's mouth, two gelatin capsules rolled out of the paper into the street and appellant grabbed one of the capsules in his clenched fist. Natividad told appellant in Spanish to open his fist, and when he did not so do, Natividad pounded appellant's fist three or four times until it opened and then picked up the paper and the gelatin capsules. The other two men had fled during this scuffle.

Later appellant told another deputy sheriff that he usually bought "the stuff" downtown from a person and paid $2.00 a capsule. It was established that the capsules contained heroin.

Appellant's version of the arrest is somewhat different. He

*Assigned by Chairman of Judicial Council.

states that at the time of the arrest he was with two friends whom he knew only by nicknames; that someone grabbed him, jerked him around and threw him to the ground; that appellant had not seen anyone approach him; did not see anyone display a badge to him nor identify himself as being a member of the sheriff's office. He stated that just before he was grabbed, he had placed an object in his mouth wrapped in white paper; that inside the white paper were five capsules of heroin. He states that he did not place this object in his mouth because of the presence of the people who grabbed him, but merely because he was about to walk away from his two friends.

Even in such state of the record, appellant here contends that there was no probable cause for his arrest, and for the search and for the seizure of the evidence; that he was denied due process of law under the Constitutions of this state and of the United States.

It appears that the two officers here were investigating the death of a 14-year-old boy at the time when they approached appellant and accosted him with the intention of ascertaining whether he was one Amaya, but that upon his popping the paper and heroin in his mouth and attempting to flee the scene, they became suspicious and effected the arrest.

It is fair inference, from the testimony before the trial court, that no search in fact took place, but that the heroin capsules fell from the mouth of appellant during his forcible apprehension.

In applying, as we must, the rule which requires that we ignore conflicts in the evidence and view that most favorable to respondent on appeal, there seems to be no doubt that the officers here had reasonable cause to believe or entertain an honest, strong suspicion that the person in question was guilty of a crime. (*People* v. *Hollins,* 173 Cal.App.2d 88, 93 [343 P.2d 174].)

The officers were within their rights and were performing their duty in approaching appellant with a view to investigating the death of the 14-year-old boy. "It is the duty of every citizen, when called upon, to give all information in his possession to the proper officers of the law as to persons connected with crimes." (*Miller* v. *Fano,* 134 Cal. 103, 106-107 [66 P. 183].) The fact that the officers were investigating one matter does not immobilize them from enforcing the law when it appears to them that a crime is being committed in their presence.

The appellant's action in placing a white piece of

paper in his mouth, his fast steps away from the officers, his subsequent violent actions, are certainly sufficient to sustain the trial judge's findings that the arrest was made with probable cause. (See *People* v. *Amado,* 167 Cal.App.2d 345, 346 [334 P.2d 254] ; *People* v. *Poole,* 174 Cal.App.2d 57, 61 [344 P.2d 30] ; *People* v. *Hollins, supra,* 173 Cal.App.2d 88.)

On this appeal, appellant contends that he was denied due process of law pursuant to the Fourteenth Amendment of the Constitution of the United States, and article I, section 13, of the California Constitution. He cites authorities to the effect that a conviction and sentence based upon a confession obtained upon coercion, brutality and violence is not in compliance with due process. In this proposition we agree with him, but we do not believe that the cases supporting the proposition are here in point.

■ Appellant's conviction here was not based upon a confession. The only violence here consisted in a brief struggle, one in which appellant took the first action, and one wherein the officers used only such force as was necessary to accomplish the arrest and to defend themselves. This was proper. (*People* v. *Brite,* 9 Cal.2d 666, 681 [72 P.2d 122].)

The facts here are surprisingly similar to those in *People* v. *Poole, supra,* 174 Cal.App.2d 57, 60, where one officer told the defendant to spit out a piece of cellophane he saw in defendant's mouth ''or he was liable to get hurt.'' Thereafter, the officers grabbed the defendant and took narcotics out of his mouth by forcing it open and reaching in with a finger. In that case the court said at page 62 : ''The 'threat' was a use of only such force as was reasonably necessary to procure the narcotics from defendant's mouth. Similarly, even the holding of defendant's arms would not constitute an unreasonable use of force, nor, taking defendant's version, would forcing open of his mouth and removing the narcotic therefrom constitute an unreasonable use of force. A reasonable search may be made incidental to a lawful arrest.''

Most assuredly, the facts here bear no relationship to the brutal and shocking force condemned in *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396].

The judgment is affirmed. The purported appeal from an order denying motion for new trial is dismissed as no such order was made or denied.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied April 14, 1961.