[Crim. No. 9106. Second Dist., Div. Four. Mar. 13, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. DENNIS MARTIN HODSON, Defendant and Appellant.

Harvey E. Byron, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In a trial without a jury (the matter being submitted on the transcript of the preliminary hearing), defendant was convicted by the court of possession of marijuana (Health & Saf. Code, § 11530), and was committed to the Youth Authority for the term prescribed by law. He appeals from the judgment. The single contention on appeal is that the evidence used to convict him was the product of an illegal search and seizure.

The following evidence was presented: Police Officer Martin had received information that three girls and two men were engaged in narcotic activities at 133 Roseland, Montebello. On July 28, 1962, at approximately 2:45 a.m., Officer Martin, with two other officers, went to investigate. Officer Martin knocked on the door. A male voice (later identified as defendant) answered "Who is it?" The officer replied, "The manager." Defendant asked, "Can't it wait?" The officer said, "No, I'd like to speak to you now." In a few moments, defendant opened the door. Officer Martin observed that there were three women in the room with defendant. He inquired as to the whereabouts of the "other man." Defendant advised him that no other man was there. Martin then asked defendant, "Do you mind if I take a look?" Defendant said "No, come on in." The officer entered, looked around the apartment, but did not find the "other man." He then asked

defendant and the three girls in the apartment for some identification. Defendant and two of the girls complied with this request. The third girl. Marguerite Chavez, told the officer that her identification was outside in the car. Martin noticed a purse near Miss Chavez. He asked if it belonged to her and if she had some identification in it. She said "Yes," and proceeded to examine the contents of the purse. She then said, "Well, it's not here." The officer asked "Well, may I see?" She replied "Yes." He then asked if she "wouldn't mind dumping the contents of the purse on the table." As she did so, a folded newspaper, a brown manila bag and a handrolled cigarette fell from her purse. The bag, the newspaper and the handrolled cigarette all contained a green, leafy substance, which was determined according to later chemical analysis to be marijuana. Defendant and the three girls were arrested and transported to the police station. A later search of the apartment uncovered various fragments of narcotics and narcotic paraphernalia.

■ It was stipulated that, among the items found, an eye dropper, spoons and needles, upon analysis, disclosed residue of morphine and heroin. Whether these items would have justified a finding of knowledgeable possession of narcotics in the light of *People* v. *Aguilar*, 223 Cal.App.2d 119 [35 Cal.Rptr. 516], need not be determined since it was also stipulated that a kitchen tablecloth, toothbrush holder, pipe, paper bindle and leather case contained fragments of marijuana. The latter visible particles of marijuana were sufficient quantitatively and qualitatively to warrant the charge of possession of marijuana. (*People* v. *Aguilar, supra.*)

Defendant neither testified nor offered evidence in his own behalf.

■ A prima facie case was made out that the search and seizure were illegal when it was established that the search was made without a warrant. The prosecution then had the burden of showing proper justification. (*People* v. *Haven*, 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]; *People* v. *Shelton*, 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665].)

■ When the officers went to defendant's residence it is clear they had no probable cause which would justify an arrest or search of the occupants or of the location. (*People* v. *Harvey*, 156 Cal.App.2d 516, 520 [319 P.2d 689].)

Our Supreme Court has recently held that "The right to seek interviews with suspects at their homes [citations] does not include the right to demand that a suspect open his

door.'' (*People* v. *Shelton,* 60 Cal.2d 740, 746 [36 Cal.Rptr. 433, 388 P.2d 665].) In the *Shelton* case, *supra,* the court held that, since the door to defendant's apartment was opened by virtue of a wrongful assertion of authority by the police, they could not rely on what they then saw to justify a warrantless arrest and search. Quoting from *Tompkins* v. *Superior Court,* 59 Cal.2d 65, 68 [27 Cal.Rptr. 889, 378 P.2d 113], the court in *Shelton* stated (at p. 747) : '' 'There are many reasons other than guilt of a felony why an occupant of an apartment may not wish himself or others present exposed to the immediate view of a stranger, even if the stranger is a police officer.' '' (*People* v. *Shelton, supra,* 60 Cal.2d 740, 747.)

 In the instant case Officer Martin did not order the door of the apartment opened as in *Shelton,* but, through the subterfuge of pretending to be the ''manager'' of the apartment, tricked defendant into opening the door.

The Attorney General argues that ''while there was present a degree of subterfuge'' to get defendant to open the door, such action was thereafter vitiated by defendant's free consent to the officers' request ''to look for another man'' in the apartment; that, once having been lawfully admitted, the officers were entitled to request the identification of the persons with whom they were speaking. Further, that it was reasonable for the officers to request a ''diligent search'' for such identification; and, when Miss Chavez, in looking for her identification, emptied the contents of her purse as requested by the officers, the evidence of a crime was reasonably disclosed in the form of the handrolled cigarette which fell from the purse.

 It is settled that ''a search or seizure made pursuant to a valid consent before any illegal police conduct occurs is obviously not a product of illegal conduct. A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest, however, is inextricably bound up with the illegal conduct and cannot be segregated therefrom.'' (*People* v. *Haven, supra,* 59 Cal.2d 713, 719.)

 And ''. . . where the right to conduct a search is obtained ostensibly for one purpose it may not be used in reality for another. [Citations.]'' (*People* v. *Roberts* 47 Cal.2d 374, 378 [303 P.2d 721].) Further, it is well established that ''. . . an entry obtained by trickery, stealth or subterfuge renders a search and seizure invalid. [Citations.]'' (*People* v. *Roberts, supra,* 47 Cal.2d 374, 378.) The

558

consent to search in the instant case was not only vitiated by the unlawful means employed to get the door to defendant's apartment open (*People* v. *Shelton, supra,* 60 Cal.2d 740, 746; *People* v. *Roberts, supra,* 47 Cal.2d 374, 378; *People* v. *Haven, supra,* 59 Cal.2d 713, 719); but the consent clearly did not authorize the search thereafter conducted. (*People* v. *Roberts, supra,* 47 Cal.2d 374, 378.) ▮ The prosecution did not carry its burden of proving that Miss Chavez voluntarily allowed the officers to observe the contents of her purse. We are of the view that the record indicates Miss Chavez emptied the contents of her purse in submission to the unlawful assertion of authority by the officer, not voluntarily. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852].)

The judgment is reversed.

Burke, P. J., and Kingsley, J., concurred.