[Crim. No. 4604. First Dist., Div. One. May 26, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LIONEL R. BROOKS, Defendant and Appellant.

665

Fred W. Armstrong, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and John F. Kraetzer, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant appeals from judgment entered upon his conviction of one charge of possession of marijuana (Health & Saf. Code, § 11530) on December 21, 1962, of charges of possession of heroin (*id.*, § 11500), possession of marijuana (*id.*, § 11530) and sale of marijuana (*id.*, § 11531) on

July 2, 1963, and of a charge of possession of heroin. (*id.*, § 11500) July 11, 1963.

He originally appeared with the public defender, was arraigned on the indictment containing the first charge and on an information setting forth the last four charges and entered his pleas of guilty to counts I and III of the latter. Counts II and IV of the information and the indictment were dismissed. At a hearing on his motion for probation he was denied probation, was sentenced to the state prison, and was granted a one-week's stay of execution. He then substituted private counsel and a motion to set aside the judgment was granted, the dismissed counts and indictment were reinstated and he entered a plea of not guilty to each charge. Thereafter the indictment containing the first charge was consolidated with the information for trial. Motions to dismiss count IV of the information under Penal Code, section 995 and to suppress evidence were both denied.

### The December 1962 Offense

On December 21, 1962, at about 4 a.m., defendant was going down Buchanan Street toward McAllister Street in the City of San Francisco to catch a bus to his place of employment at the Rincon Annex Post Office where he worked the 4:30 to 1:30 p.m. shift. As he passed near the corner of Golden Gate and Buchanan he heard, ''That's him. Get him.'' This cry, otherwise described as ''There he goes'' or ''There he is. That's him'' emanated from the wife of the owner of a service station which had been held up earlier that morning, and stirred into action two police officers and two special patrolmen who were at the scene. They immediately took the defendant into custody at gunpoint and searched him for a gun and handkerchief which the victim had described as being used in the robbery. Four cigarettes were found which proved to be marijuana. No gun was found, and although the bulk when first felt by the searching officer could have been a knife, he realized before he extracted it from the right side outer pocket of the defendant's overcoat that it was not a weapon but four separated pieces of some substance. The accuser then came over and advised the officers that defendant was not the man who held up the service station.

Defendant concedes that the officers had a right to stop the defendant for interrogation and search him for weapons. (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin* (1956) 46 Cal.2d 106, 108 [293 P.2d 52].) He asserts, however, that

insofar as the search exceeded a superficial search for concealed weapons it was illegal and that the contraband thereby secured cannot be used in evidence against him. (See *People* v. *Schaumloffel* (1959) 53 Cal.2d 96 [346 P.2d 393]; *People* v. *Gale* (1956) 46 Cal.2d 253, 257 [294 P.2d 13]; and *People* v. *Mills* (1957) 148 Cal:App.2d 392, 402-404 [306 P.2d 1005].) Defendant's reliance on the foregoing authorities is misplaced. This is not a case of detention for interrogation on suspicion. Here a felony, robbery, had been committed and the officers had reasonable cause to believe that the defendant, identified as such, was the perpetrator. There was reasonable cause for the arrest which was effected. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577]; *Gorlack* v. *Ferrari* (1960) 184 Cal.App.2d 702, 703 [7 Cal.Rptr. 699]; *People* v. *Jackson* (1960) 183 Cal.App.2d 562, 570 [6 Cal. Rptr. 884]; and Pen. Code, § 837, subd. 3.) The arrest being legal, the search predicated thereon for the gun and handkerchief used in the robbery was proper. (*People* v. *Ingle, supra,* 53 Cal.2d 407, 413; *People* v. *Jackson, supra,* 183 Cal.App.2d 562, 569-571.) The fact that the search revealed evidence of an offense other than that for which the arrest was made does not render the search illegal or preclude the use of the evidence discovered against the defendant in a prosecution for the second offense (*People* v. *Ghimenti* (1965) 232 Cal.App. 2d 76, 81 [42 Cal.Rptr. 504]; *People* v. *Beard* (1962) 199 Cal.App.2d 67, 68 [18 Cal.Rptr. 350]; *People* v. *Lopez* (1961) 196 Cal.App.2d 651, 655 [16 Cal.Rptr. 728]; *People* v. *Nebbitt* (1960) 183 Cal.App.2d 452, 461 [7 Cal.Rptr. 8]; *People* v. *Gonzales* (1960) 182 Cal.App.2d 276, 280 [5 Cal.Rptr. 920]; *People* v. *Simpson* (1959) 170 Cal.App.2d 524, 530 [339 P.2d 156]; *People* v. *Ortiz* (1956) 147 Cal.App.2d 248, 251-252 [305 P.2d 145]; and see *People* v. *Roberts* (1956) 47 Cal.2d 374, 379 [303 P.2d 721]; and *Harris* v. *United States* (1947) 331 U.S. 145, 154 [67 S.Ct. 1098, 91 L.Ed. 1399]), nor does the fact that it subsequently developed that the person arrested did not commit the offense for which the original arrest was made. (See *People* v. *Burgess* (1959) 170 Cal.App.2d 36, 41 [338 P.2d 524].)

At the time the officer extracted the four cigarettes from defendant's clothing, he asked him if they were marijuana and the defendant stated yes they were. In response to a question where he got them, the defendant stated that he bought them from another gentleman that he knew only by the name of Moe.

The probation officer who interviewed defendant between his plea of guilty to two counts of the indictment and the time the report was rendered and probation was denied, testified in respect of the December arrest as follows: "Let me say that he first told me that he had been arrested at sometime in a service station as a suspect in a—as a suspect in a robbery or questioned in regards to a robbery, at which time the police discovered some marijuana in his possession, and he felt that it wasn't fair.... He said he had just purchased them for his own personal use."

The defendant took the witness stand and denied possession of any marijuana cigarettes on this occasion; denied he was asked any questions or gave any statement about marijuana cigarettes at the time of his arrest; and denied that he made the statements attributed to him by the probation officer.

No objection was made to the testimony concerning the statements at the time of the arrest. The defendant objected to the statements made to the probation officer on the grounds they were hearsay and as such highly prejudicial. The probation officer testified that the statements were made without "any promises of immunity or hope of reward held out to" the defendant, that no force or violence was used in obtaining the statements, and they were free and voluntary. Despite reference to *People* v. *Quinn* (1964) 61 Cal.2d 551 [39 Cal. Rptr. 393, 393 P.2d 705], no attempt was made by cross-examination or by *voir dire* or direct examination of the defendant to show that the circumstances were other than stated. As noted above, defendant denied making the statements but he admitted having the interview.

It is contended that all statements made by the defendant are inadmissible because "(1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights." (*People* v. *Dorado* (1965) 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361]; *People* v. *Modesto* (1965) 62 Cal.2d 436, 445-447 [42 Cal.Rptr. 417, 398 P.2d 753]; *People* v. *Stewart* (1965) 62 Cal.2d 571, 576-580 [43 Cal.Rptr. 201, 400 P.2d 97].)

In reference to the first statement it is clear that the

defendant was in custody ["(2)"] and that he had not been informed of his right to counsel or right to remain silent ["(4)"]. Under the principles of *Stewart, supra,* it is clear that by reason of the arrest the investigation of the robbery had begun to focus on him. (62 Cal.2d at pp. 577-578.) The discovery of the four cigarettes interjected a new element into the investigation. It might be questionable under some circumstances whether "focus" predicated upon arrest for one offense, is automatically transferred to a second offense which comes under investigation, but here there could be no focal point for the crime of possession of contraband other than defendant upon whom the substance was found ["(1)"]. *Stewart* recognizes that *"Escobedo* [*Escobedo* v. *Illinois* (1964) 378 U.S. 478 (84 S.Ct. 1758, 12 L.Ed.2d 977)] indicates that the accusatory or critical stage is not reached unless another event occurs: the police must 'carry out a process of interrogations that lends itself to eliciting incriminating statements.' (*Id.* at pp. 490-491; see also *id.* at pp. 485, 492.) That process may be undertaken either before or after arrest. ▮ Whenever the two conditions are met, that is, when the officers have arrested the suspect and the officers have undertaken a process of interrogations that lends itself to eliciting incriminating statements, the accusatory or critical stage has been reached and the suspect is entitled to counsel. . . .

"We turn to the further requirement of *Escobedo* that, beyond the 'focus' and custody, the accusatory stage matures upon the undertaking by the police of a 'process of interrogations that lends itself to eliciting incriminating statements.' (378 U.S. at p. 491; see *id.* at pp. 485, 492; *United States* v. *Konigsberg* (3d Cir. 1964) 336 F.2d 844, 853.) Although in most cases the process of interrogations following an arrest will so lend itself, it does not necessarily do so.

"In the *Konigsberg* case, *supra,* Federal Bureau of Investigation agents apprehended the defendants in a garage containing stolen goods, arrested them and took them to the bureau's office. At that office, prior to an arraignment, the agents asked Konigsberg ' "why he was in this garage and just what had taken place . . . and . . . if he wished to cleanse himself or explain . . . what his reasons for being there were, why the other individuals were there." ' (*Id.* at p. 852.) Konigsberg then made some incriminating statements. Among other reasons for not applying *Escobedo,* the court said that the purpose of the interrogation, even though it took place

after the arrest, was not to elicit a confession. The court stated, 'The uncontradicted purpose of the discussion was to give Konigsberg a chance to explain his presence in the garage if he could; to hear Konigsberg's side of the story. . . . If Konigsberg or any of the other people caught in the garage could account for their presence this was their opportunity.' (*Id.,* at p. 853; see *People* v. *Ghimenti* (1965) 232 Cal.App.2d 76, 84 [42 Cal.Rptr. 504].)

"The test which we have described does not propose a determination of the actual intent or subjective purpose of the police in undertaking the interrogations but a determination based upon the objective evidence. Whatever may be the subjective intent of the interrogators, we must, in order to determine if the police are carrying out 'a process of interrogations that lends itself to eliciting incriminating statements' (*Escobedo* v. *Illinois, supra,* at p. 491), analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances.

"As some writers have suggested, 'An objective test is . . . likely for the new American rule, for it is noteworthy that the question of "purpose to elicit a confession" may be more readily determined from the objective evidence—such as the nature of the questions and accusations put to defendant and the length of the interrogation—than the question whether the police had decided to charge the defendant.' (Enker and Elsen, *Counsel for the Suspect: Massiah* v. *United States* and *Escobedo* v. *Illinois* (1964) 49 Minn.L.Rev. 47, 71.)" (62 Cal.2d at pp. 577 and 578-579.)

Turning to the instant case it appears that the length of the interrogation was brief, in fact, insofar as the statements in question are concerned it was practically spontaneous. The place was at the scene where the officers were in effect, in relation to the cigarettes, attempting to ascertain if an offense other than that which they were investigating had been committed. The time of the interrogation was directly upon the discovery of the evidence giving rise to the belief that a separate and different offense had been committed. The nature of the first question, as to the nature of the substance, was such that it might elicit an answer that the substance was other than contraband; or, as occurred, an admission that it was; or, an exculpatory statement along the lines of lack of knowledge of the nature of the substance, lack of conscious

possession, etc. The nature of the second question, in addition to the inherent assumption of knowledgeable possession by the defendant (which he had already admitted), was such as can properly be attributed to a commendable effort to determine the source of the contraband and possible offenses committed by others who may have sold or furnished it. Other relevant circumstances are that this arrest and the subsequent questioning did not stem from an original narcotic investigation which proceeded from suspicion, to probable cause, to arrest, search and seizure, and lengthy interrogation, but evolved from what might be deemed a spontaneous reaction to newly discovered evidence of criminal conduct. (Cf. *People* v. *Ausbie* (1965) 232 Cal.App.2d 724, 727 [43 Cal.Rptr. 137]; *People* v. *Collin* (1965) 232 Cal.App.2d 681, 684 [43 Cal.Rptr. 57]; *People* v. *Mora* (1965) 232 Cal.App.2d 400, 406 [42 Cal.Rptr. 725]; *People* v. *Moore* (1965) 232 Cal.App.2d 317, 318-319 [42 Cal.Rptr. 662].) Furthermore, if the premise be accepted that "the court in *Escobedo* sought the correction of the *conditions* which invited the coerced confessions and the attendant evils" (*In re Lopez* (1965) 62 Cal.2d 368, 375 and generally pp. 373-376 [42 Cal.Rptr. 188, 398 P.2d 380]) the relevant circumstances here, in that they disclose discussion on a public street in front of witnesses who attested defendant's innocence of the original charge, disclose no need to strike down the statements elicited in order to attain the stated objectives. In short the "total situation which envelop[ed] the questioning" indicates that the incriminating statements were elicited before the process of interrogation had shifted from investigatory to accusatory. (See *People* v. *Danielson* (1965) 233 Cal.App.2d 329, 331 [43 Cal.Rptr. 644]; *People* v. *Martinez* (1965) 233 Cal.App.2d 251, 254 [43 Cal.Rptr. 630]; and *People* v. *Ghimenti, supra,* 232 Cal.App.2d 76, 84.)

The statements made to the probation officer were made at a time when the investigation had focused on defendant, not only as to the circumstances surrounding the crimes of which he then stood convicted, but also as to his prior record and history. (Pen. Code, § 1203.) He was still in custody and the authorities were carrying out a process of interrogation which by statute is designed to cover the foregoing elements and all matters which may be taken into consideration in aggravation or mitigation of punishment (*id.*), presumably the incriminating along with the exculpatory. The record reflects, however, that defendant was represented

by counsel when he entered his pleas and moved for probation, and that such representation continued at the time of the hearing on the probation report and his sentence. Although it cannot be presumed that he was warned of any right to have counsel present or remain silent by the probation officer (*People* v. *Stewart, supra,* 62 Cal.2d 571 at pp. 580-581), it appears obvious that under the circumstances presented the defendant must be presumed to have consented to the interview with the probation officer with the advice and consent of his counsel. At this stage of the proceedings defendant was well aware of his right to counsel, had counsel, and perforce should be required to look to that counsel and not the probation officer for advice as to what his legal rights were, and what he should say upon being interrogated. *Dorado* and *Escobedo* therefore are not applicable. Nor in respect of this charge are we concerned with the question of whether the policy against using a withdrawn plea of guilty extends to admissions to a probation officer concerning that charge before the plea is changed (see *infra*). The charge in question had been dismissed and was not pending at the time of the interrogation.

No error is found in regard to the conviction of possession of marijuana on December 21, 1962, as charged in the indictment.

### The Offenses of July 2, 1963

Apparently a complaint predicated on the arrest of December 21, 1962, was subsequently dismissed in the municipal court and thereafter on February 14, 1963, the indictment which was referred to above was returned by the Grand Jury. No service of the warrant issued on this indictment is reflected by the record, and the defendant was not arraigned for this offense until September 10, 1963, when he appeared in respect of all of the charges.

During June and July 1963, the officers of the Narcotic Bureau of the San Francisco Police Department were working with one R. B. Cottonreider as a special employee. On June 25 this employee was given $20 and left off in the Fillmore and McAllister Street area to mingle around and procure narcotics, if possible. An hour to an hour and a half later an officer met the special employee about a block or two from the 300 block on Page Street and received from him a green vegetable substance wrapped in newspaper, which tested out as marijuana, and a phone number which proved to be listed

under the name of Brooks at 363 Page Street. On June 27, 1963, the special employee was sent into the premises at 363 Page Street and returned with what proved to be marijuana.

On July 2, 1963, while two officers listened in on separate extensions at the Narcotic Bureau, the special employee, at their request, called the number obtained on the 25th of June. When the phone was answered he said, "Hi. This is RB. Whose [sic] this?" The party answering identified himself as "Lionel." Arrangements were made for the purchase and sale of two "lids" of marijuana for $40, at room 302 of the premises where the phone was located, within the ensuing half hour. The special employee was subjected to a strip search, outfitted with a portable radio transmitter, and furnished with $40 in currency of which the denominations and serial numbers were noted. He was dropped off in the 300 block on Page Street and observed entering the premises at 363 Page without contacting anyone other than the officers. On a radio receiver the officers first heard the employee in conversation with a lady asking and receiving directions as to the location of room 302. As to what was subsequently heard on the radio the officer testified as follows: "Then we heard the elevator door open. We heard the door close. There was a few seconds, and we heard a knock, at which time we heard someone say, 'Hi. Come on in.' Then there was a lady's voice. This is a different lady's voice that was in Room 302 that said, 'Hi. I know this guy. This is RB,' at which time the—we could hear the informant say, 'Here is my money' and also receive the packages and say 'Thank you,' and they departed. The door closed. We heard the informant come back down and out the building." There was no doubt in the officer's mind that the informant conversed with the defendant.

As he came out of the building he was kept under surveillance by the three investigating officers and they all met at the end of the block. Cottonreider turned over to the officers two "lids" of what appeared to be, and later tested as, marijuana. Shortly thereafter the three officers went to the premises at 363 Page Street, interrogated the landlady about the occupants of room 302, and upon receiving advice from her that she was going up to the room to deliver a rent receipt, requested her to accompany them.

On arrival at the room the landlady knocked on the door, and the defendant asked who was there. She said the landlady and she opened the door. An officer identified himself and

requested permission to enter to discuss narcotic activities, and the defendant invited the officers in. The apartment which consisted of a dining room, bedroom, front room, and a small kitchen, was allegedly leased by defendant's brother. It was occupied at the time of entry by the defendant, his 8-year-old daughter, a former fellow employee, the latter's wife, and another male friend of the defendant. It contained a telephone with the number called earlier in the day. The defendant was recognized by his distinguishable voice which had been heard on that phone call.

An officer requested the defendant to come with him to the kitchen so that they could talk privately. He asked the defendant if he had any money and Brooks took out a roll of bills. The officer examined the bills and upon finding those which had been given the special employee, showed the defendant the serial numbers which had been written down and placed him under arrest.

The officer then reached into defendant's bathrobe pocket and found a balloon containing four small bindles which are used in the narcotic trade as the way heroin is packaged and sold. The defendant on inquiry stated it was heroin and it proved to be such.

In response to the officer's question, ''Are there any more narcotics in the apartment?'' the defendant produced from an upper kitchen shelf a brown cardboard box containing loose marijuana; two zigzag cigarette wrapping papers, and a matchbox containing one wax paper bag with marijuana in it.

Another officer looked on a lower kitchen shelf and found two bags which yielded what proved to be marijuana.

Defendant suggests that all evidence whether physical, testimony as to observations, or testimony as to defendant's statements (hereinafter discussed), which was obtained by activities of the police following his indictment February 14, 1963, should be excluded because it was obtained in violation of the principles of *Massiah* v. *United States* (1964) 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246] and *Spano* v. *New York* (1959) 360 U.S. 315 [79 S.Ct. 1202, 3 L.Ed.2d 1265]. (See *People* v. *Dorado, supra,* 62 Cal.2d 338, 345, 346.) Those cases prohibit efforts to secure incriminating statements concerning the original offense after indictment, and exclude any evidence secured by such efforts. This argument overlooks that the activities in question here were directed toward the investigation of new offenses, and the apprehension of the person or persons responsible for the same. They yielded no direct evi-

dence as to the truth or falsity of the December charge, except indirectly as corroborating defendant's knowledge of narcotic substances. (The statements to the probation officer concerning the offense charged in the indictment, which were hereinabove discussed, were made at a time when the indictment was dismissed and before it was reinstated.) The pendency of one charge may give rise to privileges and immunities of freedom from harassment concerning that charge, but it does not confer a license to commit similar offenses without accountability.

Defendant urges that the sale which is charged in the third count of the information was not established because there is a manifest gap in the chain of evidence. (See *People* v. *Robison* (1961) 193 Cal.App.2d 410, 412 [14 Cal.Rptr. 181]; *People* v. *Lawrence* (1959) 168 Cal.App.2d 510, 513-515 [336 P.2d 189]; *People* v. *Morgan* (1958) 157 Cal.App.2d 756, 757-758 [321 P.2d 873]; *People* v. *Richardson* (1957) 152 Cal. App.2d 310, 313 [313 P.2d 651]; and *People* v. *Barnett* (1953) 118 Cal.App.2d 336, 337-339 [257 P.2d 1041].) ▇ He asserts that there is no evidence to show the source of the marijuana returned by the special employee, and that it cannot be attributed to defendant because other voices were heard on the radio transmission, because the premises consisted of apartments and not a single family dwelling, and because in fact there were other people in the premises in which defendant was found. On the other hand, in this case there was clear-cut evidence of arrangement for a sale, the defendant's voice was heard at the time of the sale, and the money was found immediately thereafter in the possession of defendant. (Defendant's admission is disregarded at this point because it is subject to the attack hereinafter discussed, and, in any event, could not be relied upon as justifying the arrest and search of the defendant which occurred before it was made.) The facts when considered as a whole appear to be more consistent with *People* v. *Castedy* (1961) 194 Cal.App.2d 763, 765-767 [15 Cal.Rptr. 413]; and *People* v. *Render* (1960) 181 Cal.App.2d 190, 192-195 [5 Cal.Rptr. 236], in which cases radio transmission was used. (See also *People* v. *Rodriquez* (1962) 202 Cal.App.2d 191, 194-195 [20 Cal.Rptr. 556]; *People* v. *Sauceda* (1962) 199 Cal.App.2d 47, 53-54 [18 Cal.Rptr. 452]; *People* v. *Wilburn* (1961) 195 Cal.App.2d 702, 706-707 [16 Cal.Rptr. 97]; *People* v. *Robinson, supra,* 193 Cal.App.2d 410, 411-412; *People* v. *Givens* (1961) 191 Cal.App.2d 834, 837-838 [13 Cal.Rptr. 157]; *People* v. *Gonzales* (1960) 186 Cal.App.2d 79, 81-82 [8 Cal.Rptr. 704; *People* v. *Fernandez*

(1959) 172 Cal.App.2d 747, 752-753 [342 P.2d 309]; *People*
v. *Scott* (1959) 170 Cal.App.2d 446, 454-456 [339 P.2d 162];
and *People* v. *Valencia* (1957) 156 Cal.App.2d 337, 339-340
[319 P.2d 377].)

Defendant seeks to have the evidence of the remote
surveillance by radio excluded. He asserts that the use of the
device under circumstances such as were present here, that is,
to obviate the necessity of calling the informer or special em-
ployee as a witness to the conduct or statements of the de-
fendant, "radically shift[s] the pattern of presentation of
evidence in the criminal trial, a shift that may be used to
conceal substantial factual and legal issues concerning the
rights of the accused and the administration of criminal
justice." (Warren, C. J., concurring in *Lopez* v. *United States*
(1962) 373 U.S. 427, 445-446 [83 S.Ct. 1381, 10 L.Ed.2d 462]
and joining with Brennan, Douglas and Goldberg, dissenting
Justices, in criticizing *On Lee* v. *United States* (1951) 343
U.S. 747 [72 S.Ct. 967, 96 L.Ed. 1270], wherein the practice
was upheld by a divided court.) Whatever merits there may
be in the position so advanced, *On Lee* is not yet reversed,
and the decisions in this state have countenanced the use of
electronic devices, under proper circumstances, to extend the
auditory range of the investigator who later testifies himself
or produces a recording of what was heard.

"Although evidence obtained by electronic eavesdropping
accomplished by acts which constitute a trespass has been
held inadmissible in *People* v. *Tarantino,* 45 Cal.2d 590 [290
P.2d 505], as being evidence obtained by illegal search and
seizure under the principles of *People* v. *Cahan,* 44 Cal.2d 434
[282 P.2d 905, 50 A.L.R.2d 513], it nevertheless has been
held that '[w]here the entry is by invitation of the defendant,
a secret recording of a vis-a-vis conversation is not inadmissi-
ble . . . whether the recording be by means of a self-contained
recording device [citing cases] or by means of a concealed
wireless transmitter where the recording is made at another
location [citing cases].' (*People* v. *Albert,* 182 Cal.App.2d 729,
736 [6 Cal.Rptr. 473] (hearing denied).) In *People* v. *Wootan,*
195 Cal.App.2d 481 [15 Cal.Rptr. 833], it was also held that
the party to the electronically recorded conversation could
use a transcript thereof to refresh his memory of said conver-
sation even though portions of the record from which the
transcript was made were unintelligible." (*People* v. *Davis*
(1962) 210 Cal.App.2d 721, 737 [26 Cal.Rptr. 903].)

Defendant further asserts that the evidence of the sale
cannot be used because he has not had an opportunity to con-

front the special employee. Reliance on *Pointer* v. *Texas* (1965) 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923]; and *Douglas* v. *Alabama* (1965) 380 U.S. 415 [85 S.Ct. 1074, 13 L.Ed.2d 934] is unfounded. In the former case the right of confrontation provided by the Sixth Amendment of the United States Constitution and the correlative right of cross-examination are held to be applicable to state proceedings by the Fourteenth Amendment, so as to preclude the use at the trial in chief of testimony obtained at a preliminary hearing without an opportunity for cross-examination. The second case applied the same principle to strike down the use of the prior statement of an alleged hostile witness (actually asserting the privilege against self-incrimination) in the examination of said witness by the prosecution on the ground the defendant could not cross-examine the witness as to the matters in the prior statement because of the witness' refusal to answer. In the instant case, the testimony of the special employee is not in evidence or relied upon. His statements are only alluded to in the testimony of others to show what was said and done by the defendant. In *People* v. *McShann* (1960) 177 Cal.App.2d 195, 199 [2 Cal. Rptr. 71], the opinion recites: "Appellant seems to suggest that by playing the record of the telephone conversations the prosecution made the informer a testimonial witness, thus, in the absence of the right of cross-examination, rendering his portion of the conversation hearsay. This view is based on a misconception of the purpose and effect of the recording. It was not offered to establish the truth of anything said by the informer, but to show what he said and the reactions of defendant to the statements. [Citations.] The testimony of the officers who made the recording was evidence of its accuracy. Their testimony identifying defendant's voice was some evidence that he was one of the participants in that conversation. The playing of the record before the jury was further evidence, since it gave the jurors an opportunity to compare the tone, enunciation and diction of the party claimed to be defendant with the speech of defendant when he testified before them. Thus there was some evidence that defendant was the party to whom the calls were made, and the conversation could be fully shown. [Citations.] The recording is not within the proscription of the hearsay rule, nor did its playing make the informer a testimonial witness."

Finally, defendant would quash evidence of the sale because the prosecution precluded him from getting the testimony of the informer within the doctrine of *People* v. *Kiihoa* (1960) 53

Cal.2d. 748, 752-754 [3 Cal.Rptr. 1, 349 P.2d 673], which set aside the conviction where the prosecution admittedly released the defendant and delayed his prosecution until the informer could render himself immune from process which would obtain his presence at the trial. The facts here, however, do not come within that principle. The record shows that Cottonreider volunteered his services in June 1693; that his address was unknown to the officers and they had no way of contacting him; that he would phone in and arrange a meeting place; and that he was used about six times and paid for his services. He was last seen by the officers in July 1963. An arrest report reflected his arrest for drunkenness in Palm Springs in November 1963. The record further reflects that the prosecution made some effort to locate him. There was no obligation on the prosecution to produce Cottonreider. In the absence of evidence to show that the People sought to suppress his testimony or bring about his absence or disappearance, defendant cannot predicate error on the People's failure to produce him. (*People* v. *Herrera* (1965) 232 Cal.App.2d 561, 564 [43 Cal.Rptr. 14] ; *People* v. *Galvan* (1962) 208 Cal.App.2d 443, 448 [25 Cal.Rptr. 128] and cases therein cited; *People* v. *Rodriquez, supra,* 202 Cal.App.2d 191, 195; *People* v. *Render, supra,* 181 Cal.App.2d 190, 195-196; *People* v. *McShann, supra,* 177 Cal.App.2d 195, 198-199; *People* v. *Scott, supra,* 170 Cal.App.2d 446, 453-454; *People* v. *Alexander* (1959) 168 Cal.App.2d 753, 754-755 [336 P.2d 565].)

It is concluded that unless it is otherwise tainted the conviction of sale of marijuana as charged in count III of the information is sustained by sufficient competent evidence.

Defendant attacks his convictions for possession of heroin and marijuana (counts I and II of the information) on the grounds that the entry and subsequent search and seizure of the apartment were illegal. He contends that by having the landlady accompany them the officers secured entry through trick or ruse.

Since the search was made without a warrant the burden was on the People to show justification. (*People* v. *Reeves* (1964) 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393] ; *People* v. *Shelton* (1964) 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665] ; *People* v. *Porter* (1964) 227 Cal.App.2d 211, 213 [38 Cal.Rptr. 621] and *People* v. *Hodson* (1964) 225 Cal. App.2d 554, 556 [37 Cal.Rptr. 575].) "It is well settled by both federal and state decisions that 'an entry obtained by trickery, stealth or subterfuge renders a search and seizure invalid' [citations]." (*People* v. *Reeves, supra,* at

p. 273; and see *People* v. *Porter, supra*; *People* v. *Hodson, supra*; and *People* v. *Currier* (1965) 232 Cal.App.2d 103, 110 [42 Cal.Rptr. 562].)

In the instant case, however, if the testimony of the officers is accepted, as it must be, there was coincidence rather than subterfuge in the entry with the landlady. Also, the defendant invited the officers in. ▇▇▇ In any event, if the suggestion of *Reeves* is followed, and the record is examined to determine whether there was reasonable and probable cause to enter the apartment without a warrant, the conclusion, from the sale which had just been witnessed, is inescapable that there was reasonable and probable cause to arrest the defendant and search the premises in which he was found. (*People* v. *Torres* (1961) 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Hammond* (1960) 54 Cal.2d 846, 853 [9 Cal.Rptr. 233, 357 P.2d 289]; *People* v. *Maddox* (1956) 46 Cal.2d 301, 304 [294 P.2d 6].) In such event, the fact the officers might have gained admittance by subterfuge is immaterial. (*People* v. *Lawrence* (1957) 149 Cal.App.2d 435, 446 [308 P.2d 821].)

It is concluded that there is nothing in the manner of the entry to the apartment or concerning the arrest of the defendant to preclude the use in evidence of the evidence thereby obtained.

▇▇▇ There remains for consideration the question of whether defendant's conviction of the offenses committed on July 2, 1963, should be reversed because of the introduction into evidence of his extrajudicial statements in the light of *Dorado, supra*. The operative words used in the commission of the offense, of course, do not fall within the prohibitory rule, and there is no burden on the special employee or the police working with him to advise the suspect of his right to remain silent and to have the assistance of counsel. (*People* v. *Sogoian* (1965) 232 Cal.App.2d 430, 434 [42 Cal.Rptr. 736].)

▇▇▇ At the time of defendant's arrest when the officer discovered the identity of the serial numbers he asked the defendant if he knew why he was there, and Brooks replied, "I'm beginning to understand." Following the arrest when the officer found the balloon with four bindles in the defendant's bathrobe pocket, he asked him what it was and Brooks stated it was heroin. "He explained to [the officer] that . . . 9:00 o'clock the same morning of July 2nd, 1963, a person that he knew only as John had come to the door and in exchange for two lids of marijuana, which would be $40 worth of marijuana, the defendant exchanged to him four papers of heroin, which

would be worth $40 on the same market. He told them that if he could not get rid of the heroin in a couple of days he would come back and buy them back from him."

Then the officer asked, "Are there any more narcotics in the apartment?" and the defendant produced the brown cardboard box and contents. On discovery of the two bags of marijuana in the lower shelf the defendant, according to the officer, "stated that he had forgotten all about them and had not meant to deceive us."

The conversation in the apartment reverted to the sales to Cottonreider, and defendant admitted the sale on the day in question and the two prior sales. He was asked how he got started selling marijuana. "He stated that soon after he had left the employment of the postoffice a friend that he identified only as John had called him and stated to him that he knew he had left the postoffice and must have quite a bit of money from his retirement fund, and he asked him if he wanted to use this money in getting started in selling weed, which is marijuana, and that this man had a good connection and could supply him with all he needed." Here was a process of interrogation in connection with the offense for which he had been arrested. The statements considered in their setting are no less than confessions and their offer and admission into evidence requires a reversal of the conviction on count III of the information. (*People* v. *Collin* (1965) 232 Cal.App.2d 681, 684 [43 Cal. Rptr. 57]; *People* v. *Ausbie* (1965) 232 Cal.App.2d 724, 727 [43 Cal.Rptr. 137]; *People* v. *Mora* (1965) 232 Cal.App.2d 400, 405-406 [42 Cal.Rptr. 725]; *People* v. *Moore* (1965) 232 Cal.App.2d 317, 318-319 [42 Cal.Rptr. 662]; cf. *People* v. *Ghimenti, supra,* 232 Cal.App.2d 76, 84, in respect of confession of one offense as admission of another.)

It is unnecessary to apply the criteria of *Stewart* which have been set forth above to such of the foregoing statements made by defendant after his arrest which refer to the charges of possession of heroin (count I) and possession of marijuana (count II). Nor is a determination required of to what extent the defendant's custody under one charge, and the failure to advise him of his rights in regard thereto, colors and taints a declaration as to another offense which otherwise might be deemed spontaneous. The interrelationship in space and time of that offense with the charges of possession in counts I and II of the information requires that defendant's conviction on those counts be reversed also. (See *People* v. *Stewart, supra,* 62 Cal.2d 571, 581-582.) The criteria for admission or exclusion of any statements made by the defendant can be better

evaluated in the event of retrial on the evidence therein produced on the basis of principles which have been promulgated since the first hearing.

After the foregoing, Brooks was asked if he wanted to do anything for himself, and there was some conversation about his "getting" the man who was selling narcotics to him, in response to which Brooks made an unsuccessful phone call allegedly to determine when the person he was buying from would be in San Francisco again from Los Angeles. There was further discussion concerning the defendant's making purchases from this source under the direction of the police. The officer insisted that the suggestion for this program was initiated by defendant, and that no threats or promises were made to induce his offer to participate. The officer did, however, recommend and secure a reduction in the defendant's bail so he could operate to secure narcotics from his source under police direction. Arrangements were made that the defendant, if he made bail, was to contact the officers if he set up a buy from his source. Bail was furnished by other than the police for the defendant's release on the evening of July 2 after he had been in jail two or three hours. Thereafter, with the exception of a couple of phone calls to the effect that his source had not showed up, there was no contact with defendant, and it was concluded that he was not cooperating.

The statements last referred to were no part of the People's case in chief. They were brought out on cross-examination of the witnesses for the People. Insofar as the so-called arrangements are incriminating the responsibility for their presentation to the jury rests with the defendant. He in fact admitted that such arrangements were proffered, but claimed, in denying all knowledge of any sale or possession of narcotics and all the other incriminating statements attributed to him, that they were initiated by the officers. Under the circumstances there is nothing in *Dorado* which would justify the exclusion of the statements offered by defendant—or require a reversal because of their admission. In the first place, if the bargaining was initiated by the defendant it might evidence a conscious waiver of his rights (*In re Schlette*, 232 Cal. App.2d 407, 412-413 [42 Cal.Rptr. 708]), and in any event he cannot complain of the prejudicial effect of evidence elicited in support of his own case.[1] (*People* v. *Simmons*

---

[1]The record suggests that at this stage of the case defendant was trying to establish a relationship with the police which could be used to put them in a bad light generally, or be used in defense of the July 11,

(1946) 28 Cal.2d 699, 722 [172 P.2d 18]; *People* v. *Schoon* (1918) 177 Cal. 678, 683-684 [171 P. 680]; *People* v. *Quock Wong* (1954) 128 Cal.App.2d 552, 554-555 [275 P.2d 778]; *People* v. *Meraviglia* (1925) 73 Cal.App. 402, 406 [238 P. 794]; and see *People* v. *Campbell* (1965) 233 Cal.App.2d 38, 48-49 [43 Cal.Rptr. 237].)

In respect of the first three charges in the information, the probation officer testified that the defendant advised him that "subsequently [to December offense], while he was on bail he was arrested for selling narcotics to a friend who he subsequently learned was an informant . . . it was marijuana."

He further stated that the defendant revealed that "he had been smoking [marijuana] . . . off and on since around 1951"; and that the heroin found in his apartment belonged to some friends.

The propriety of the use of these statements in the light of the rule of *Dorado* has been discussed above. The presence, actual or implied, of defendant's attorney in connection with these proceedings removes it from any prohibition therein contained.

*People* v. *Quinn* (1964) 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705], leaves the matter in a paradoxical position insofar as other considerations are concerned. It leaves open the assumption that if the incriminatory statements to the probation officer are free and voluntary (and now, if they also satisfy *Dorado*) they will be admissible (*id.*, p. 554), and yet at the same time establishes, despite earlier contrary decisions, that evidence of defendant's withdrawn plea of guilty is inadmissible (*id.*, pp. 554-555). It is obvious that where the former statements embrace a confession of the crime in question their admission negates the salutary results attributed to nonuser of the withdrawn plea. (See *id.*, p. 555, fn. 2.) From this paradox a generalization could extend the rule excluding the plea to a rule excluding any information secured by the probation officer. Caution dictates that such generalization be attended by an analysis of the grounds for change of plea. The record fails to show what grounds were advanced by defendant. It may be that they were consistent with his actual possession of heroin and sale of marijuana in July 2, 1963, and merely went to the legality of the evidence produced, and the ability of the prosecution to prove his guilt.

1963, charge to show that he was buying for them. This latter suggestion was contained in his remarks to the probation officer after his original pleas to two other charges, but was not followed in his testimony.

If he obtained his hearing on this point and received an adverse ruling he should not complain of the admission of the statement which merely corroborates the evidence which was ruled legally admissible after contest. (There never was a plea of guilty to the offenses of December 21, 1962, (the indictment) or July 11, 1963, (count IV) and the possession of marijuana, other than that sold (count II), so the statements made in reference to those offenses may be treated as any other admissions or confessions.)

Another approach may be by analogy to the rules of privilege. It is demonstrable that nondisclosure should be protected in the event of change of plea, or a new trial because of the granting of motion for new trial or a successful appeal, in order that full disclosure will be made in all cases under Penal Code section 1203 for the better administration of justice. The contrary rule may induce constraint even in those cases where no further relief is ultimately granted, and by reason thereof imprisonment may result, where probation would have been indicated on full disclosure. Further inquiry along this line appears precluded by existing decisions. In *People* v. *Solis* (1961) 193 Cal.App.2d 68, 75 [13 Cal.Rptr. 813], the opinion recites: ''There is no merit in the assertion that the appellant could claim a privilege with respect to communications made by him to the probation officer. No statute so provides. Consequently, such evidence was admissible if it was relevant to any issue before the court. (Cf. *People* v. *Curry,* 97 Cal.App.2d 537, 547-550 [218 P.2d 153].)'' The court qualified the foregoing as follows: ''The appellant's further argument that an effect of the testimony of the probation officer was to disclose to the jury that he had been convicted of the charged offense in a prior trial appears to have some basis, but that testimony cannot be said to have been improperly received if such evidence was otherwise admissible. Under such circumstances, there is no violation of the provisions of section 1180 of the Penal Code. (Cf. *People* v. *Castellanos, supra,* 157 Cal.App.2d 36, 39 [320 P.2d 152].) While the use of the probation officer as a witness under the circumstances was extraordinary and involved a practice not to be encouraged, it cannot be said that it constituted prejudicial error.'' (*Id.,* pp. 76-77, fns. omitted.) It has been thereafter held that where the statements had no probative value on the issues in question, and only went to show the prior verdict of guilty which had been set aside, that prejudicial error results. (*People* v. *Kessler* (1963) 221 Cal.App.2d

187, 191-192 [34 Cal.Rptr. 433].) Here, however, no reference was made to the earlier proceedings, and the rule as to non-privilege appears to stand. (See *People* v. *Magee* (1963) 217 Cal.App.2d 443, 460-463 [31 Cal.Rptr. 658], statements to juvenile probation officer; *People* v. *Denne* (1956) 141 Cal. App.2d 499, 512 [297 P.2d 451]; and *People* v. *Curry* (1950) 97 Cal.App.2d 537, 547-550 [218 P.2d 153], overruled in another point in *People* v. *McCaughan* (1957) 49 Cal.2d 409, 420 [317 P.2d 974].) In *Curry* the court said in relation to a claimed privilege under the provisions of the Code of Civil Procedure: "Section 1881, subdivision 5, merely limits the disclosure to situations where the public interest would suffer by the disclosure. Actually the public interest would suffer by the failure to disclose statements made to the probation officer which are inconsistent with defendant's later sworn testimony." (97 Cal.App.2d at p. 548.)[2]

Finally, it may be noted that the statements in regard to count I, possession of heroin, were not a confession in any event. He declared that the heroin found in the apartment belonged to others.

In view of the foregoing it is concluded that no error can be predicated upon the receipt of the testimony of the probation officer as to the prior statements of the defendant. Despite the overwhelming evidence of the defendant's guilt of the sale charged in count III, his conviction must be reversed because of the admission of the confession in violation of *Dorado,* and because of the interrelationship, the convictions on counts I and II are likewise set aside.

### The Offense of July 11, 1963

On July 11, 1963, Officers Gilford and Miller were on crime prevention patrol on the 7 p.m. to 3 a.m. watch. The former had been present the preceding December when defendant was brought into the Northern Police Station following his arrest, and had information from the crime laboratory that narcotics recently had been found under defendant's dominion and control. Officer Gilford had been a policeman over three years and had participated in about 200 narcotic investigations resulting in 120 or 130 arrests. He was familiar with

---

[2]In fact these matters were all reviewed by this court in *People* v. *Quinn* (1964) 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705], and it was concluded that the objection of privilege was properly overruled. (*People* v. *Quinn* (1963) 36 Cal.Rptr. 233, 240-241, vacated and superseded by *People* v. *Quinn, supra.*) The Supreme Court in finding that the statements were involuntary had no occasion to and did not pass on this issue.

persons engaged in the narcotic traffic in the area and had grown up with some of them.

About 11:40 p.m. the officers observed the defendant conversing with two known narcotic addicts on Fillmore Street. They stopped the patrol car and approached the group. When the defendant started to walk away Miller said, ''Wait a minute. . . . May I speak to you?'' The defendant stopped and said ''Yes.'' Gilford, who wished to verify the identity of the defendant, asked him, ''You are Lionel Brooks?'' and the defendant replied in the affirmative. He was requested to come to the patrol car, and, on the way he was asked if he had a knife. He responded, ''Yes. I'll get it,'' and as he withdrew his hand from his pocket there came into view two packages of tinfoil folded up into rectangular packets, which were of a size and shape generally used for carrying narcotic contraband. Gilford asked him what it was, and Brooks thrust his hand back in his pocket and stated: ''It's nothing. I ain't got nothing. I just came down here to eat.'' Gilford grabbed his arm and Miller grabbed his pocket from the outside. The former recovered the tinfoil packages and the latter extracted a money clip with a small knife from the same pocket.

 Gilford unwrapped one of the tinfoils and revealed a group of paper packets or bindles. He opened one of the papers and asked the defendant what it was. Brooks replied that it was ''smack,'' (vernacular for heroin in the district involved). In response to the officer's inquiry he stated he had obtained it a short time before from a man named George who had asked him to take it up to a house on Page Street between Divisadero and Scott, and that he knew it was ''smack'' when he got it. The substance proved to be heroin.

Subsequently, after his first plea to other charges, and while this count was dismissed, defendant told the probation officer that he bailed out and was out on Fillmore Street working for the police; that the police wanted him to make a purchase of marijuana, but the particular individual didn't have marijuana only heroin, and that he was arrested after he bought it for $50.

As with the other charges, defendant denied any possession of contraband and the statements attributed to him by the arresting officers and the probation officer.

Defendant first objects to the use of the evidence obtained on this occasion, because his detention and the ensuing search of his person constituted an unwarranted interference with his

personal rights. He urges that the professed intent of the officer to interrogate him in the patrol car in order to verify his identity by examination of his identification papers, and to enable the officers to make out an interrogation card exceeded any casual interrogation of a citizen which the law may authorize.[3] (See *People* v. *Gale, supra,* 46 Cal.2d 253, 256; and *Wirin* v. *Horrall* (1948) 85 Cal.App.2d 497, 501 [193 P.2d 470].) From the foregoing premise it is contended that there was no right to search or ask about weapons, and that anything revealed by this illegal interference with defendant's liberty cannot itself justify the arrest and seizure of what was thereby disclosed. (See *People* v. *Gale, supra,* 46 Cal.2d at p. 258; *People* v. *Simon* (1955) 45 Cal.2d 645, 648 [290 P.2d 531]; *People* v. *Brown* (1955) 45 Cal.2d 640, 643 [290 P.2d 528]; *People* v. *Brown* (1962) 205 Cal.App.2d 188, 192 [22 Cal.Rptr. 835]; *People* v. *Pendarvis* (1960) 178 Cal.App.2d 239, 240 [2 Cal.Rptr. 824].)

The evidence here, however, does not show a general dragnet in which defendant was innocently enmeshed. ■ His history as known to the officers, and that of his companions, justified their making inquiry of defendant. (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 450-452; *People* v. *Torres, supra,* 56 Cal.2d 864, 867; *People* v. *Michael* (1955) 45 Cal.2d 751, 754 [290 P.2d 852]; *People* v. *Simon, supra,* 45 Cal.2d 645, 650]; *People* v. *Almarez* (1961) 190 Cal.App.2d 380, 382 [12 Cal.Rptr. 111]; *People* v. *Sanchez* (1961) 189 Cal.App.2d 720, 723-725 [11 Cal.Rptr. 407]; *People* v. *Poole* (1959) 174 Cal.App.2d 57, 61-62 [344 P.2d 30].) It was also reasonable for the officers to insure their own safety by inquiring about or making a superficial search for weapons. (*People* v. *Mickelson, supra;* *People* v. *Simon, supra;* and cf. Pen. Code, § 833.)

Nevertheless, the arrest and search having been made without a warrant the burden was on the prosecution to establish proper justification. (*People* v. *Cruz* (1964) 61 Cal.2d 861, 865 [40 Cal.Rptr. 841, 395 P.2d 889]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

■ ''Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. The test is not whether the facts on which the officer relies are sufficient to convict, but only

---

[3]The officer expressly disclaimed any intention to search anyone until the defendant revealed the packages referred to above.

whether the person should stand trial. (*People* v. *Ingle,* 53 Cal.2d 407, 412-413 [348 P.2d 577]; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967].)'' (*People* v. *Torres, supra,* 56 Cal.2d at p. 866; and see *People* v. *Rosemont* (1963) 221 Cal.App.2d 500, 501 [34 Cal.Rptr. 667]; *People* v. *Sanchez, supra,* 189 Cal.App.2d 720, 726; *People* v. *Poole, supra,* 174 Cal.App.2d 57, 60.) ██ The officer's knowledge of the defendant's background, the observation of a packet which the officer reasonably believed to contain narcotics, and the defendant's attempt to conceal the same are sufficient to support a finding that there was reasonable cause for the arrest for commission of a felony, i.e., possession of narcotics. (Pen. Code, § 836, subds. 1 and 3; *People* v. *Harris* (1965) 62 Cal. 2d 681, 683 [43 Cal.Rptr. 833, 401 P.2d 225]; *People* v. *Cruz, supra,* 61 Cal.2d 861, 865; *People* v. *Torres, supra,* 56 Cal.2d 864, 866-867; *People* v. *Rosemont, supra,* 221 Cal.App.2d 500, 502; *People* v. *Brown, supra,* 205 Cal.App.2d 188, 193; *People* v. *Almarez, supra,* 190 Cal.App.2d 380, 382-383; *People* v. *Sanchez, supra,* 189 Cal.App.2d 720, 725-726; *People* v. *Pendarvis, supra,* 178 Cal.App.2d 239, 241; and *People* v. *Poole, supra,* 174 Cal.App.2d 57, 60-61.) ██ The arrest being proper the seizure of the contraband cannot be attacked. (*People* v. *Torres, supra,* 56 Cal.2d 864, 866; and *People* v. *Poole, supra,* at p. 62.)

██ For the reasons set forth above it is concluded that the statements made by the defendant at the time of his arrest, in that they were part of the investigatory rather than the accusatory process, are not proscribed by *Dorado.* The statement made to the probation officer was as heretofore noted not within the scope of *Dorado,* was not made in connection with an offense for which the defendant was charged at the time it was made, and in any event was an exculpatory rather than an incriminatory statement. No reversible error is found in connection with the conviction on count IV.

Consideration has been given to the question whether the erroneous admission of the confession and other statements in regard to counts I, II and III colors the charges in count IV and in the indictment, and compels the reversal of both or either of them. Insofar as these offenses are concerned the evidence in connection with the events of July 2 is only of collateral effect. The confession of the sale and any other inadmissible incriminating statements in regard to the offenses charged as committed on that occasion may be treated as illegally obtained evidence in regard to the offenses of Decem-

ber 21 and July 11. As such the following words of Peters, P. J. in *People* v. *Herman* (1958) 163 Cal.App.2d 821, 826-827 [329 P.2d 989] are applicable: "In any event, even if the search of the residence was improper, the error in admitting the evidence secured in that search was harmless. Appellant was charged with one count of possession of heroin. The evidence that a large quantity of heroin was found on his person is uncontradicted and overwhelming. Once the validity of the arrest and search of appellant is established there can be no doubt at all that appellant is guilty of the offense charged. Thus, even if the evidence secured in the house was improperly admitted its admission could not have been prejudicial. The introduction of illegally secured evidence does not per se require a reversal—it depends upon whether such evidence was prejudicial. (*People* v. *Valenti*, 49 Cal.2d 199 [316 P.2d 633] ; *People* v. *Tarantino*, 45 Cal.2d 590 [290 P.2d 505] ; *People* v. *Felli*, 156 Cal.App.2d 123 [318 P.2d 840].) Here, even if the evidence were illegally secured, its erroneous admission into evidence could not possibly have been prejudicial."

Here the evidence of possession on December 21 and July 11 is controverted, but overwhelmingly established. Insofar as evidence of sale and possession on July 2 tends to corroborate the offenses on the other dates, the legally admissible evidence introduced of the defendant's activities on that date overshadows any effect the defendant's inadmissible statements may have produced. In the absence of prejudice the two other convictions should not be reversed. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is affirmed in respect of the charges set forth in the indictment and in count IV of the information, and reversed as to counts I, II and III thereof.[4]

Sullivan, P. J., and Molinari, J., concurred.

---

[4]It is noted that the abstract of judgment as set forth in the clerk's transcript recites: "It is ordered that sentences shall be served in respect to one another as follows: Counts One, Two and Four to run concurrently with each other and with sentence imposed in Action 61354. Sentence on Count *Four* [*sic*] to run *consecutively* with the longest sentence imposed in the other counts or in Action 61354" (italics added under "Four") with no reference to Count Three; whereas, the reporter's transcript reflects: "In Count Three the Defendant is sentenced to State Prison for the term prescribed by law. That sentence to run consecutively to the longest of the other four sentences." If necessary, appropriate proceedings may be taken to correct this error on issuance of a remittitur.